[Cite as *State v. Szykulski*, 2021-Ohio-2733.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-639 (M.C. No. 2018-CRB-020121) |
| | | & |
| v. | : | No. 19AP-640 (M.C. No. 2018-CRB-015690) |
| William T. Szykulski, | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on August 10, 2021

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias*, and *Stephen J. Steinberg*, for appellee. **Argued:** *Stephen J. Steinberg.*

**On brief:** *Jeffrey M. Blosser*, for appellant. **Argued:** *William T. Szykulski*, pro se.

APPEALS from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, William T. Szykulski, appeals from two judgment entries of the Franklin County Municipal Court finding him guilty of separate counts of violating a protection order. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By complaint filed July 31, 2018, plaintiff-appellee, State of Ohio, charged Szykulski with one count of violating a civil stalking protection order in violation of R.C. 2919.27, a first-degree misdemeanor. The charge related to an allegation that Szykulski violated a valid protection order by placing a card on the windshield of his former girlfriend, E.E.B. Subsequently, the state charged Szykulski with a second count of violating a civil protection order in violation of R.C. 2919.27, again as a first-degree misdemeanor. The

second charge related to an allegation that Szykulski violated a valid protection order by sending an email to one of E.E.B.'s co-workers. Szykulski entered a plea of not guilty and requested a jury trial.

{¶ 3} At the August 2019 trial on both counts, E.E.B. testified that she met Szykulski in July 2016 while she was living in Minnesota and Szykulski lived in Columbus. The two began a long-distance relationship, and E.E.B. testified she moved to Columbus in November 2016 to live with Szykulski. In October 2017, E.E.B. ended her relationship with Szykulski, and E.E.B. testified that it was a "bad" break-up in which she called the police to report Szykulski for domestic violence. (Tr. at 137.)

{¶ 4} Despite ending the relationship in October 2017, E.E.B. testified she did not move out of their shared residence until December 2017. Upon moving, E.E.B. said she did not give Szykulski her new address and made it clear that she did not want any contact with him. However, E.E.B. said Szykulski continued to contact her by phone, email, social media, and through other people. This behavior, E.E.B. testified, caused her to block Szykulski's phone numbers, email address, and social media accounts; nonetheless, E.E.B. said Szykulski continued to contact her.

{¶ 5} In May 2018, E.E.B. obtained a temporary civil stalking protection order against Szykulski, and the state introduced a copy of the temporary protection order at trial. The protection order prohibited Szykulski from contacting E.E.B. or her employer in any manner. When service of the temporary protection order was perfected upon Szykulski on May 22, 2018, the temporary order listed E.E.B.'s new address despite her request to have her address redacted.

{¶ 6} The temporary order was in effect in July 2018. E.E.B. testified that early in the morning on July 31, 2018, she saw a card inside an envelope on her car's windshield. When she arrived at work, E.E.B. said she looked at the card and noticed it was a card she had sent to Szykulski in August 2016, noting that it was written in her handwriting and was addressed to Szykulski's Columbus address. E.E.B. testified the card also had a postmark from St. Paul, Minnesota dated August 12, 2016, and the return address was E.E.B.'s former Minnesota address. Additionally, E.E.B. testified that after she mailed the card to Szykulski, she never retook possession of it. The state introduced both the card and the envelope as evidence at trial.

{¶ 7}    After realizing the card on her car windshield was from Szykulski, E.E.B. said she contacted her attorney who advised her to call the police.  However, E.E.B. testified that she did not want to call the police because, having called them twice before to report Szykulski 's behavior, she believed they would not file charges against Szykulski and would only talk to Szykulski and warn him about his behavior.  Additionally, E.E.B. said she was afraid of how Szykulski might react if she called the police.  After discussing the matter with her attorney, however, her attorney insisted that E.E.B. call the police, and E.E.B. eventually agreed.

{¶ 8}    Two officers with the Columbus Police Department responded to E.E.B.'s call.  Officers Joshua Cramer and Deann Trionfante both testified that E.E.B. was shaking and crying when she described finding the card and her concerns about Szykulski.  E.E.B. provided a copy of the protection order to the officers, and she gave the card and its envelope to the officers who, after their conversation with E.E.B., decided to arrest Szykulski for violating a protection order.  The officers testified that they radioed for another officer to arrest Szykulski at his home.

{¶ 9}    The state also presented the testimony of Benton Alleman, E.E.B.'s supervisor at her place of employment, the Title Boxing Club.  Alleman testified he knew that E.E.B. had a protection order against Szykulski and that the gym had a copy of the protection order.  Pursuant to his testimony, Alleman stated that he received an email on July 22, 2018 from Szykulski but did not open the email until a few days later.  Alleman said he knew the email was from Szykulski because the sender's address was Szykulski's name.  Additionally, E.E.B. identified the sender's email address as belonging to Szykulski.

{¶ 10}  The email, which the state introduced as evidence at trial, stated:

> From: "William Szykulski" <wszykulski@gmail.com>
> Sent: Sunday, July 22, 2018 7:1opm
> To: [   ]@titleboxingclub.com
> Subject: [E.E.B.]'s filing as a petitioner
>
> Benton,
> First, I want to start off by saying thank you for being a good guy and a friend.  I stayed loyal under your family's franchise for many years for numerous reasons.  It was worth losing my original contract where I could go to any gym once Maria Manzo bought out the rights.

> Second, I have attached the small fraction line of questioning for the next court date August 30. I did not intend anyone from your club or any members to be involved. [E.E.B.] had no witnesses at the first hearing. That changed once Abe was willing to come testify, then this opened up the doors. I have respect for your family's franchise so I attached a small sampling.
>
> Third, this entire court situation is full of hard emotions. I still love [E.E.B.]. I messed up in many ways. I pushed her away and now I am getting what I asked for. I am a fool and realized within two weeks how much [E.E.B.] meant to me. She is the best woman to ever to be [a part] of my life. She has every right to feel safe in a city where she has no family and a [handful] of friends. I harbor no negative feelings that she filed against me. That being said, after all the evidence has been exchanged, nothing points to me. I hope she can see one day I have done nothing to harm her car. Please do not place any judgments on her. While I am frustrated she thinks I would harm her in any way, she should feel safe no matter where she goes.
>
> Best Wishes,
> William

(State's Ex. F.)

{¶ 11} Alleman forwarded the email to another trainer at the gym, Abe Javadi, on August 9, 2018. Javadi testified that he had known E.E.B. and Szykulski when they were dating, that their break-up did not go well, and that E.E.B. had obtained a protection order against Szykulski. Javadi said he put the copy of the protection order on file at the gym and told other people about it. After receiving the forwarded email from Alleman, Javadi said he forwarded it to E.E.B. E.E.B. then forwarded the email to her attorney and to the prosecutor's office. Upon receiving the email, the prosecutor's office authorized a second charge of violating a protection order be filed against Szykulski.

{¶ 12} Following deliberations, the jury found Szykulski guilty of both counts of violating a civil protection order. The trial court sentenced Szykulski to 180 days in jail with 175 days suspended plus 2 days jail-time credit on the first complaint and 180 days in jail with 177 days suspended on the second complaint, ordering the sentences to run consecutively for an aggregate sentence of 6 days in jail. The trial court journalized his conviction and sentence in two August 19, 2019 sentencing entries. Szykulski timely appeals.

## II. Assignments of Error

{¶ 13} Szykulski assigns the following errors for our review:

[1.] Mr. Szykulski's conviction for Violation a Civil Stalking Protection Order by allegedly placing a card on a vehicle owned by the person protected by the Civil Stalking Protection Order is not supported by sufficient evidence.

[2.] Mr. Szykulski's conviction for Violating a Civil Stalking Protection Order for allegedly sending an email to the employer of the person protected by the Civil Stalking Protection Order is not supported by sufficient evidence.

[3.] Mr. Szykulski's conviction for Violating a Civil Stalking Protection Order by allegedly placing a card on the vehicle owned by the person protected by the Civil Stalking Protection Order is not supported by sufficient evidence.

[4.] Mr. Szykulski's conviction for Violating a Civil Stalking Protection Order for allegedly sending an email to the employer of the person protected by the Civil Stalking Protection Order is against the manifest weight of the evidence.

## III. First and Second Assignments of Error – Sufficiency of the Evidence

{¶ 14} Szykulski's first and second assignments of error are interrelated, and we address them jointly.  In his first assignment of error, Szykulski argues there was insufficient evidence to support his conviction of violating a protection order related to placing the card on the car windshield.  In his second assignment of error, Szykulski argues there was insufficient evidence to support his conviction of violating a protection order related to sending an email to E.E.B.'s boss.  Taken together, Szykulski's first and second assignments of error assert there was insufficient evidence to support his convictions.

{¶ 15} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy. *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 16} Szykulski argues the state presented insufficient evidence to sustain his conviction of two counts of violating a protection order. Pursuant to R.C. 2919.27, "[n]o person shall recklessly violate the terms of * * * [a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code." R.C. 2919.27(A)(2). *See also State v. Partlow*, 10th Dist. No. 12AP-459, 2013-Ohio-2771, ¶ 19. Further, "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 17} At trial, the state introduced the May 16, 2018 protection order issued pursuant to R.C. 2903.214. The terms of the protection order against Szykulski prohibited him from being within 500 feet of E.E.B. and from contacting E.E.B. or her employer. Szykulski does not dispute that there was a valid civil stalking protection order issued against him or that placing the card on the car windshield or sending the email would violate the terms of the protection order. Instead, Szykulski argues the state did not present any credible evidence to prove (1) that the card was, indeed, placed on E.E.B.'s windshield, (2) that even if the card was there, that Szykulski was the one who placed it there, or (3) that Szykulski was the author and sender of the email to E.E.B.'s boss.

{¶ 18} Szykulski argues through these assignments of error that because the state did not introduce any photographs of the card on the windshield, any surveillance footage showing Szykulski placing the card on the windshield, or any electronic forensic evidence demonstrating Szykulski was, indeed, the author of and sender of the email, the state therefore failed to present evidence of all the essential elements of the offenses. Stated another way, Szykulski's argument is that there was insufficient evidence to support his convictions because the state relied on circumstantial, rather than direct, evidence.

{¶ 19} "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " (Internal quotations omitted.) *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has the same probative value as direct

evidence. *Robinson* at ¶ 20; *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 120. " '[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *Robinson* at ¶ 20, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶ 20} As Szykulski notes, the majority of the state's case against him relies on E.E.B.'s testimony. Szykulski asserts E.E.B.'s testimony is insufficient to sustain his conviction because she lacks credibility. However, " 'in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 38, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. E.E.B. testified at trial that only Szykulski had possession of the card prior to her finding it on her windshield and that she never retook possession of the card after mailing it to Szykulski. Further, the email address was comprised of Szykulski's first initial and last name, the sender identification on the email listed Szykulski's name, the email contents related to Szykulski's personal life, and E.E.B., having previously exchanged emails with Szykulski, identified the email address as belonging to Szykulski. From that evidence, a jury could reasonably conclude it was Szykulski who both placed the card on the car windshield and who wrote and sent the email to E.E.B.'s employer. Thus, the state presented sufficient evidence that Szykulski violated a protection order by placing the card on E.E.B.'s windshield and by emailing her employer. We will address Szykulski's argument regarding the credibility of the witnesses in our analysis of the manifest weight of the evidence.

{¶ 21} As there was sufficient evidence to sustain both of Szykulski's convictions of violating a protection order, we overrule his first and second assignments of error.

## IV. Third and Fourth Assignments of Error – Manifest Weight of the Evidence

{¶ 22} Szykulski's third and fourth assignments of error are interrelated, and we address them jointly. In his third assignment of error, Szykulski argues that his conviction of violating a protection order related to placing a card on the car windshield is against the manifest weight of the evidence. In his fourth and final assignment of error, Szykulski argues that his conviction of violating a protection order related to sending an email to

E.E.B.'s supervisor is against the manifest weight of the evidence. Taken together, Szykulski's third and fourth assignments of error assert his convictions are against the manifest weight of the evidence.

{¶ 23} When presented with a manifest weight argument, an appellate court engages in a limited reweighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.3d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 24} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 25} Szykulski argues his convictions are against the manifest weight of the evidence because the jury clearly lost its way in believing E.E.B.'s testimony. However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As we noted above, the trier of fact remains free to believe "all, part,

or none of a witness's testimony." *Raver* at ¶ 21. Though Szykulski argues it is possible that E.E.B., herself, placed the card on the windshield to wrongly accuse him of violating the protection order, E.E.B. testified that she found the card on her car windshield early in the morning when she was leaving for work and that the card had not been in her possession since she originally mailed it to Szykulski. Szykulski does not point to any inconsistencies in E.E.B.'s testimony or statements to police; rather, he merely suggests E.E.B. had the motive and opportunity to concoct a false story. However, having reviewed the record in its entirety, we do not find the jury clearly lost its way in finding E.E.B.'s testimony to be credible.

{¶ 26} Further, to the extent Szykulski argues his convictions are against the manifest weight of the evidence due to the lack of physical or forensic evidence connecting him to placing the card on the windshield or to sending the email, this court has repeatedly stated that " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *State v. Murray*, 10th Dist. No. 16AP-16, 2017-Ohio-949, ¶ 38, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other [type of] physical evidence does not render the conviction against the manifest weight of the evidence.' " *Peeples* at ¶ 21, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16 (concluding a conviction based on victim's testimony identifying the defendant was not against the manifest weight of the evidence). As we stated above, E.E.B. provided credible testimony that Szykulski was the last person in possession of the card before it appeared on her windshield and that the email address linked to the email belonged to Szykulski.

{¶ 27} Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding the state proved that Szykulski violated the terms of the protection order both by placing the card on E.E.B.'s car windshield and by sending the email to her employer. We conclude, therefore, that the manifest weight of the evidence supports Szykulski's convictions of violating a protection order. Accordingly, we overrule Szykulski's third and fourth assignments of error.

**V. Disposition**

{¶ 28}   Based on the foregoing reasons, the sufficiency and manifest weight of the evidence support Szykulski's convictions of violating a protection order.   Having overruled Szykulski's four assignments of error, we affirm the judgments of the Franklin County Municipal Court.

*Judgments affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.