[Cite as *State v. Craig*, 2022-Ohio-1219.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,               :               No. 21AP-468
                                        (C.P.C. No. 19CR-4325)

v.                                               :

                                          (REGULAR CALENDAR)

Jimmie L. Craig,                                 :

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on April 12, 2022

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Defendant-appellant, Jimmie L. Craig, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of tampering with evidence. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed August 29, 2019, plaintiff-appellee, State of Ohio, charged Craig with one count of felonious assault in violation of R.C. 2903.11, a second-degree felony; one count of domestic violence in violation of R.C. 2919.25, a third-degree felony; and one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony. The charges related to an incident at Craig's residence on August 3, 2019. Craig entered a plea of not guilty.

{¶ 3}    At a trial beginning June 21, 2021, Paul Miracle, an officer with the Columbus Division of Police, testified that around 4:30 a.m. on August 3, 2019, he was canvassing an area of Broad Street for an unrelated matter when a vehicle pulled up to the passenger side of his cruiser and honked the horn. Officer Miracle said the man in the vehicle, later identified as Albert Harper, Jr., asked him where the nearest hospital was located and told Officer Miracle he had just been stabbed. At that point, Officer Miracle said he activated his body-worn camera, and the state played the video recording from the body-worn camera for the jury. When he approached the vehicle, Officer Miracle said he noticed the man's shirt was soaked in blood on the left side. Due to the severity of the man's injury, Officer Miracle called for paramedics and an ambulance arrived to assist. During this interaction, Officer Miracle said the man told him that his roommate stabbed him at their residence and provided Officer Miracle the address. Based on that information, Officer Miracle asked for officers to be dispatched to Harper's address, 153 Belvedere Avenue.

{¶ 4}    Harper testified that in August 2019 he lived in his father's home at 153 Belvedere Avenue along with his cousin, Craig. As roommates, Harper testified he and Craig paid rent to Harper's father and split the utility bills. Additionally, Harper testified that he was addicted to crack in 2019, though he had overcome that addiction by the time of trial.

{¶ 5}    Pursuant to Harper's testimony, in August 2019, Craig owed Harper for his share of the utilities. During the early morning hours of August 3, 2019, Harper said he opened the door to Craig's room to demand money to pay the bills but said he did not enter Craig's bedroom. At the time, Harper said Craig was in the room with Craig's common-law wife, Amber Wagner. Harper said Craig refused to give him money and an argument ensued. According to Harper, Craig then "came across the bed" and stabbed Harper through the doorway. (Tr. Vol. 1 at 191.) Harper testified he was "furious" that he had been stabbed but did not initially realize how severe his injury was. (Tr. Vol. 1 at 192.) Harper said Craig and his wife then fled the house and got in their vehicle so Harper got in his own vehicle and tried to block them in while he called police. However, before he could call the police, Harper said Craig and his wife were able to drive away, and Harper chased them. Eventually, Harper said Craig and his wife were able to get on the freeway and he lost sight of them. At that point, Harper said he saw a police officer, flagged the officer down, and

told him he needed to get to a hospital because he had been stabbed. Harper had surgery that night to repair the wound in his large intestine and remained in the hospital for three weeks.

{¶ 6} Bob McCotter, a detective with the Columbus Division of Police, testified he initially responded to the scene where Harper had made contact with a police officer before going to 153 Belvedere Avenue to investigate. Several days after the altercation, Detective McCotter interviewed Craig at Columbus Police headquarters. The state played a video recording of Detective McCotter's interview with Craig for the jury.

{¶ 7} During the interview, Craig told the detectives that he was asleep when Harper "busted the door down" and demanded money. (State's Ex. B at 6:14-6:20.) After telling Harper he did not have any more money to give him, Craig said an argument ensued. At that point, Craig said Harper raised a large stick and gestured as though he was going to hit Craig's wife with the stick. Craig said he then used a jagged-edge steak knife to stab Harper in order to defend his wife. When the detectives asked Craig where the knife was, he said he threw it out of the vehicle window while he and his wife were fleeing and Harper was chasing them. Craig said he did not want to call the police while Harper was chasing him because Harper is a family member.

{¶ 8} Wagner testified that she and Craig were asleep on August 3, 2019 when Harper "busted" through the door and demanded money, scaring her. (Tr. Vol. 2 at 333.) Wagner said Harper then went into his room and got a large stick that she described as being five to six feet long and as thick as a large tree branch, and she said Harper was trying to hit her with it. When Harper came into the room with the stick, Wagner said Craig moved her back and got in between her and Harper. Wagner testified that when Harper raised the stick again, Craig lunged at him and stabbed him, and then Harper backed up and retreated to his room. She testified she was scared in that moment and feared Harper would hit her in the head with the stick.

{¶ 9} Wagner said that by the time she and Craig were able to get into her vehicle, Harper was already outside. Wagner described Harper chasing their vehicle for 20 or 30 minutes with Harper trying to ram into her vehicle. Wagner said she did not call the police because she was in shock.

{¶ 10} At the conclusion of evidence, the trial court instructed the jury on defense of another. Following deliberations, the jury found Craig not guilty of felonious assault and not guilty of domestic violence but guilty of tampering with evidence. At an August 16, 2021 sentencing hearing, the trial court sentenced Craig to two years in prison. The trial court journalized Craig's conviction and sentence in an August 23, 2021 judgment entry and filed a corrected amended judgment entry on September 3, 2021. Craig timely appeals.

## II. Assignment of Error

{¶ 11} Craig assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of tampering with evidence, as that verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

## III. Analysis

{¶ 12} In his sole assignment of error, Craig argues there was insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence.

### A. Sufficiency of the Evidence

{¶ 13} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 14} The jury found Craig guilty of one count of tampering with evidence. R.C. 2921.12(A)(1) defines tampering with evidence and provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Thus, to convict Craig of tampering with evidence, the state needed to submit sufficient evidence for the trier of

fact to conclude Craig knew or should have known an investigation was forthcoming, but he nevertheless purposely took steps to conceal or remove the knife so as to impair its availability in the investigation. *See, e.g.*, *State v. Miller*, 10th Dist. No. 14AP-851, 2015-Ohio-4678, ¶ 30. "A person acts purposely when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Moreover, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶ 15} Craig asserts the state failed to present sufficient evidence that he had knowledge of an investigation already in progress or likely to be instituted and that his purpose in disposing of the knife was to impair its value or availability in an investigation. Instead, Craig argues he had a reasonable belief that there would never be a criminal investigation because Harper would not ever call the police. In determining whether a person knew an official investigation was likely to be instituted, "[l]ikelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. Further, "[t]he law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). The trier of fact may consider the entire set of circumstances surrounding the event and infer intent from those facts. *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478 (1993).

{¶ 16} The state presented evidence that Craig admitted to stabbing Harper, removed the knife from the residence, and admitted to tossing the knife out of the vehicle as he and his wife fled from the house. Although Craig maintained that he acted in defense of another, the jury could conclude from this evidence that Craig knew his conduct would have triggered an investigation into the stabbing. Additionally, the jury could have concluded Craig's purpose in disposing of the knife was to impair its availability during such

an investigation. Thus, construing the evidence in a light most favorable to the prosecution, the state presented sufficient evidence to allow a rational trier of fact to find, beyond a reasonable doubt, that Craig purposely concealed evidence pivotal to the investigation into the stabbing.

### B. Manifest Weight of the Evidence

{¶ 17} Craig additionally argues his conviction of tampering with evidence is against the manifest weight of the evidence.

{¶ 18} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 19} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 20} Craig argues his conviction is against the manifest weight of the evidence because he had a reasonable belief that Harper would never contact the police to trigger an

investigation. Though Craig did not testify at trial, he asserts the jury clearly lost its way when it evaluated his statements to police to determine his intent. However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version of events. *State v. Szykulski*, 19AP-639, 2021-Ohio-2733, ¶ 25, citing *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.

{¶ 21} In his police interview, Craig admitted that he stabbed Harper, took the knife from the scene of the stabbing, and threw the knife out of the vehicle while Harper chased him. Even though Craig maintained he acted in self-defense, he did not contact police after the altercation, and he additionally told the detectives he was surprised he did not encounter any police as Harper was chasing him. From his admission that he disposed of the knife, a jury could reasonably conclude that Harper both knew an investigation was likely to be instituted and that he disposed of the knife with the purpose of impairing its availability during the investigation.

{¶ 22} Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding the state proved Craig committed the offense of tampering with evidence. We conclude, therefore, that the manifest weight of the evidence supports Craig's conviction of tampering with evidence. Having additionally concluded there was sufficient evidence to sustain his conviction, we overrule Craig's sole assignment of error.

## IV. Disposition

{¶ 23} Based on the foregoing reasons, sufficient evidence and the manifest weight of the evidence support Craig's conviction of tampering with evidence. Having overruled Craig's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.