[Cite as *State v. Hoyle*, 2022-Ohio-3065.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                               :

      Plaintiff-Appellee,                            :                    No. 21AP-610
                                                                                            (C.P.C. No. 19CR-5713)

v.                                                               :

                                                                                        (REGULAR CALENDAR)

Michael R. Hoyle,                                        :

      Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on September 1, 2022

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Samuel H. Shamansky Co., L.P.A.*, *Samuel H. Shamansky*, *Donald L. Regensburger*, and *Ashton C. Gaitanos*, for appellant. **Argued:** *Donald L. Regensburger*.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Defendant-appellant, Michael R. Hoyle, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of two counts of felonious assault. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed November 4, 2019, plaintiff-appellee, State of Ohio, charged Hoyle with two counts of felonious assault in violation of R.C. 2903.11, both felonies of the second degree. The indictment related to an incident on October 3, 2019 when Leo-Ali Peoples and his son Maalik-Ali Peoples were hit with a motor vehicle. The indictment also charged Hoyle's son, Michael Hoyle II, with cruelty to companion animals in violation of R.C. 0959.131, an accompanying firearm specification pursuant to R.C.

2941.145(A), and having weapons while under disability in violation of R.C. 2923.13. The charges against Hoyle II arose from the same incident on October 3, 2019 and related to Leo's dog. Hoyle entered a plea of not guilty.

{¶ 3} At a trial beginning August 16, 2021, Leo testified he was married to Clarissa Peoples until 2016, and he and Clarissa have four children. Maalik is Leo and Clarissa's oldest son, Hoyle is Clarissa's brother, and Hoyle II is Hoyle's son. Additionally, Leo is the owner of Plugs Barbershop on East Chatterton Road, and he has a dog who stays at the barbershop.

{¶ 4} Pursuant to Leo's testimony, on October 3, 2019 he was working at the barbershop when Hoyle and Hoyle II appeared in the parking lot of a Speedway gas station outside the barbershop along with several other men, some of whom were holding guns. Leo said Hoyle got out of his vehicle and walked to the barbershop parking lot, yelling "[m]e and you." (Tr. Vol. 2 at 273.) At that point, Leo said that Maalik went outside with some customers to try to stop the altercation. When the dog went outside, Leo said someone sprayed the dog with mace. He said the dog then chased Hoyle causing Hoyle to go back to his vehicle, a gray-silver Dodge Dakota pickup truck. Once Hoyle was back in his vehicle, Leo said Hoyle drove straight at him, coming over the parking lot barrier at a high rate of speed, and hit Leo twice with the truck. First, Leo said Hoyle hit his left arm and left side of his body. Leo said Hoyle then put the truck in reverse and then drove forward once more, hitting Leo in the ankle with enough force to break Leo's leg brace. Further, Leo said the second hit from the vehicle also caused a burn-like injury to his leg, causing his flesh to peel off and his leg to bleed.

{¶ 5} Leo testified that when Maalik saw him on the ground after being hit the first time, Maalik ran over to him to help him. Leo said that Hoyle then drove the truck at Maalik and either hit or almost hit him. After he was able to get up off the ground, Leo said he then saw Hoyle II walk toward him with a gun. Leo testified that Hoyle II walked directly to the dog and shot her three times. Once the gun was fired, Leo said everyone scattered and that Hoyle II jumped in the truck with Hoyle and the two drove off. Maalik picked up the dog and drove her to a veterinarian, and the police arrived a short time later. Leo said he went to an urgent care after being hit by the car where he was given Ibuprofen 800 for the pain. Additionally, Leo said he had to buy a new leg brace.

{¶ 6}    Leo testified he and Hoyle had been in a past altercation leading to Leo being charged with and convicted of aggravated menacing.  Because of his history with Hoyle, Leo said he got his phone out on October 3, 2019 to record the incident.  The state played several video clips for the jury, and Leo described the scenes as he remembered them.  The first clip showed a small crowd of people outside the barbershop, including Hoyle.  The second clip showed the Dodge Dakota truck and showed Hoyle II before the camera begins to point at either the sky or ground.  Leo testified that after he was hit with the truck, he dropped the phone that was recording and that someone else picked it up and took it into the barbershop where the phone continued to record audio despite an obstructed video view.  Leo described another video clip as containing audio of the three gunshots, the dog screaming, and tires screeching.

{¶ 7}    Maalik, who was 22 years old at the time of trial, also testified.  On October 3, 2019, Maalik said he went to his maternal grandfather's home to use the bathroom and say hello to his mother and grandfather.  When he exited the bathroom, Maalik said Hoyle began yelling at him and getting in his face.  Maalik testified he left his grandfather's house at that time and took his younger brother with him, and then he returned to the barbershop where he had been doing apprentice work for his father.

{¶ 8}    Describing the afternoon of October 3, 2019, Maalik said he did not notice Hoyle and Hoyle II until they started coming over closer to the barbershop.  Maalik testified he was outside with his cousins and with the dog when he saw Hoyle across the street.  Among the cars gathered across the street, Maalik said he also saw his maternal grandfather's truck and his maternal aunt's vehicle, and he testified that it appeared the cars were loaded with people.

{¶ 9}    Maalik testified that Hoyle instigated the altercation and that eight or nine people then showed up, some of whom had guns with them, outside the barbershop.  Maalik described Hoyle's vehicle as a silver Dodge Ram pickup truck.  As the people, including Hoyle II, crossed the street and came toward the barbershop parking lot, Maalik said they were arguing and yelling.  Maalik testified that the dog then ran up to protect him and someone sprayed her with mace.  Next, Maalik said the silver truck pulled into the barbershop parking lot at a high rate of speed, hit his father in the leg and knee the first time, and then ran over his father's foot with the brace on it the second time.  Maalik

testified that Hoyle was driving the truck. When Maalik ran over to help his father, Maalik said Hoyle then reversed the truck and hit Maalik with it as well. Maalik testified that although the truck hit him and caused him pain, he did not require any medical attention. Further, Maalik said his father was on the driver's side of the truck when it hit his father and that the vehicle's mirror broke when the truck hit his father. According to Maalik's testimony, after the truck hit them the second time, the men got out of the truck with their guns and tried to start a fight.

{¶ 10} At that point, Maalik said Hoyle II walked across the street, put on a hooded sweatshirt, and walked up with a gun to Maalik, Leo, and the dog. Maalik testified that Hoyle II pointed the gun at him and his father before shooting the dog three or four times. Maalik said Hoyle II dropped the gun but then picked it up and ran off. After the gunshots, Maalik said he rushed the dog to the veterinarian.

{¶ 11} Rodney Howell, a deputy with the Franklin County Sheriff's Department, also testified. Deputy Howell testified he responded to the barbershop on October 3, 2019 after reports of a shooting. Based on the casings and projectiles located at the scene, Deputy Howell said the incident involved a semi-automatic weapon. Deputy Howell stated there were individuals at the scene who refused medical help and, therefore, no medics were called to the scene.

{¶ 12} Jeffrey Watkins, a witness who observed the incident, testified he saw someone pull out a pistol and then heard three gunshots. After the gun shots, Watkins said he saw two people run to a silver Dodge pickup truck and flee the scene. Watkins testified he followed the silver Dodge pickup truck in his own vehicle, called 911, and provided police with a location of the vehicle. Watkins followed the vehicle to James Road until police intervened.

{¶ 13} Following deliberations, the jury found Hoyle guilty of both counts of felonious assault. The trial court conducted a sentencing hearing on October 21, 2021 and sentenced Hoyle to an aggregate indefinite sentence of a minimum of five years to a maximum of seven and one-half years in prison. The trial court journalized Hoyle's convictions and sentence in an October 21, 2021 judgment entry. Hoyle timely appeals.

## II. Assignment of Error

{¶ 14} Appellant assigns the following error for our review:

> Appellant's convictions were against the manifest weight of the evidence in violation of his right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

## III. Discussion

{¶ 15} In his sole assignment of error, Hoyle argues his convictions are against the manifest weight of the evidence.

{¶ 16} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 17} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 18} Hoyle was convicted of two counts of felonious assault, one related to Leo and the other related to Maalik. R.C. 2903.11 provides that no person shall knowingly cause serious physical harm to another or cause, or attempt to cause, physical harm to another by means of a deadly weapon. Hoyle does not dispute that the state presented sufficient evidence that, if believed, demonstrated all of the essential elements of felonious assault. Instead, he asserts his convictions are against the manifest weight of the evidence because no reasonable finder of fact could have found Leo's or Maalik's testimony credible. More specifically, Hoyle asserts Leo and Maalik offered testimony that was both internally inconsistent and conflicted with one another's version of events.

{¶ 19} Hoyle notes that Leo and Maalik disagreed as to whether they had any forewarning that Hoyle and his family were coming to the barbershop, how Hoyle arrived at the barbershop and initiated contact, how the dog got outside, how many people were there, which side of the vehicle struck Leo, and how Hoyle and Hoyle II left the scene. Given these inconsistencies, Hoyle asserts the jury clearly lost its way in believing the remaining portions of Leo's and Maalik's testimony.

{¶ 20} Despite Hoyle's attempts to highlight where Leo and Maalik provided divergent testimony, his argument ignores that Leo and Maalik provided testimony that was largely the same, including consistent testimony on the crucial details of the incident. Namely, both Leo and Maalik testified Hoyle was driving the truck deliberately toward them and hit them both with the pickup truck before fleeing the scene. Leo admitted he was unsure of whether Maalik had been hit or almost hit with the truck because he had already been knocked to the ground, but Maalik testified the truck did, indeed, hit him as well. The highlighted inconsistencies largely related to ancillary matters and did not, when viewed in context, undermine the credibility as a whole of either Leo's or Maalik's testimony. Having reviewed the record in its entirety, we do not agree with Hoyle that the jury clearly lost its way in resolving the inconsistencies in Leo's and Maalik's testimony and in finding their testimony to be credible. *See State v. Szykulski*, 10th Dist. No. 19AP-639, 2021-Ohio-2733, ¶ 25 (a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version); *Raver* at ¶ 21 (the trier of fact remains free to believe "all, part, or none of a witness's testimony").

{¶ 21} Additionally, to the extent Hoyle asserts there was a lack of physical evidence to corroborate Leo's and Maalik's testimony, this court has repeatedly stated that " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *State v. Murray* 10th Dist. No. 16AP-16, 2017-Ohio-949, ¶ 38, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other [type of] physical evidence does not render the conviction against the manifest weight of the evidence.' " *Peeples* at ¶ 21, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16 (concluding a conviction based on victim's testimony identifying the defendant was not against the manifest weight of the evidence). As we stated above, both Leo and Maalik provided credible testimony that Hoyle intentionally drove a pickup truck toward them, hitting Leo first, then backing up before hitting Leo a second time and hitting Maalik.

{¶ 22} Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding Hoyle knowingly caused or attempted to cause serious bodily harm to Leo and Maalik when he hit them with his vehicle. We conclude, therefore, that the manifest weight of the evidence supports Hoyle's convictions of felonious assault. Accordingly, we overrule Hoyle's sole assignment of error.

## IV. Disposition

{¶ 23} Based on the foregoing reasons, Hoyle's convictions of felonious assault are not against the manifest weight of the evidence. Having overruled Hoyle's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

———————————