[Cite as *State v. Jackson*, 2024-Ohio-2721.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                           :

      Plaintiff-Appellee,          :              No. 23AP-388
                                                              (C.P.C. No. 21CR-3505)
v.                                       :

                                                         (REGULAR CALENDAR)
Cortez J. Jackson,                       :

      Defendant-Appellant.         :

D E C I S I O N

Rendered on July 18, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Cortez J. Jackson, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of murder and tampering with evidence, both with a firearm specification, and having a weapon while under disability. For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2} By indictment filed August 26, 2021, plaintiff-appellee, State of Ohio, charged Jackson with one count of purposeful murder, in violation of R.C. 2903.02(A), and one count of felony murder, in violation of R.C. 2903.02(B); one count of domestic violence, in violation of R.C. 2919.25; one count of tampering with evidence, in violation of R.C.

2921.12; and one count of having weapons while under disability, in violation of R.C. 2923.13. Both of the murder charges and the tampering with evidence charge contained accompanying firearm specifications. The charges arose from the August 19, 2021 homicide of Alyse Sharrae Edwards at her apartment in Columbus. Jackson entered a plea of not guilty.

{¶ 3} Jackson elected to waive his right to a jury trial on the having a weapon while under disability charge, and, prior to trial, the domestic violence charge was dismissed at the state's request. Beginning April 3, 2023, the trial court conducted a jury trial on the remaining charges. As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 4} Three individuals who were near Edwards' apartment when she was shot testified. Onaee Sharp, a neighbor of Edwards and Jackson, testified that, on the morning of August 19, 2021, she heard "either a little screaming or a loud '[h]elp' and a big bump." (Apr. 3, 2023 Tr. Vol. II at 139.) Her boyfriend, Terrence Thomas, told her there was "a dead body" at her apartment door. (Tr. Vol. II at 139.) She opened the door to find Edwards on the ground and Jackson in the hallway with a shocked look on his face. Sharp could see blood on her door from Edwards, and she looked at Jackson and asked him "what the eff did he do to her." (Tr. Vol. II at 131.) Jackson gave no response, and Sharp immediately called 911 for help. Although Jackson initially was unresponsive to her, when the police arrived "he [became] irate, he started punching on the walls and everything instead of just answering the questions." (Tr. Vol II at 144.) Thomas testified that he first opened the apartment door after hearing someone knock. When he opened it, he saw Edwards on the ground with blood "all over the door, all over the floor in the hallway." (Tr. Vol. II at 157.) He shut the door and informed Sharp someone was in the hall, and he thought she had been shot. Damien O'Bryant, who was staying with a friend at a neighboring apartment, testified that, when he reentered the apartment building after smoking outside, he saw a severely injured Edwards, who looked at him and said, "[h]elp." (Tr. Vol. II at 170.) Around the same time, he observed Jackson "come back into the building." (Tr. Vol. II at 180.) O'Bryant immediately called the police.

{¶ 5} Columbus Division of Police Officers Michael Church, Darryl Kerns, and Lucas Metz were dispatched to the scene. Officer Church testified that, when they entered the apartment building, they observed Edwards' bloody body. Jackson was nearby

screaming that Edwards had been shot. Because Edwards' head was leaning against a door, Officer Kerns repositioned her so she was lying completely flat. They observed a gunshot wound to her lower abdomen and a trail of blood through the apartment. Officer Church asked Jackson if he knew who had shot Edwards, and he stated he did not know. Initially, Jackson seemed distraught about Edwards being shot, and then he became upset at the officers, claiming they were not doing their job or helping her. Officer Metz testified that he had to physically remove Jackson from the area where Edwards was and detain him because he was "agitated * * * screaming, [and] not wanting to listen." (Tr. Vol. II at 215.) Officer Metz was concerned Jackson would interfere with the officers helping Edwards.

{¶ 6} Donald Jones, a detective in the Crime Scene Search Unit of the Columbus Division of Police, testified that while investigating and processing the scene they found a spent shell casing, also called a cartridge case, in the kitchen sink and a firearm in the water tank behind the toilet in the bathroom. Once the top of that tank was removed, the firearm was visible in the water. Keith O'Connor, another detective for the Columbus Division of Police, interviewed Jackson at police headquarters. Detective O'Connor testified that Jackson was asked whether the shooting was an accident, and he did not disclose anything about what happened, other than denying that he shot Edwards.

{¶ 7} Forensic experts examined the recovered firearm, cartridge case, and the gunshot residue samples taken from Jackson's hands. Caleb Worley, a forensic scientist for the Columbus Division of Police Crime Laboratory, testified that the cartridge case was fired from the firearm found at the scene. Worley further testified that, while he did not test the degree of force necessary to pull the trigger of this firearm, he fired this particular weapon and did not observe any remarkable deviation from the average force needed to pull a trigger. Relatedly, he noted it is "extremely difficult" for a modern firearm to fire unless the trigger is pulled. (Tr. Vol. III at 295.) Ted Manasian, a gunshot residue expert for the Ohio Bureau of Criminal Investigation, testified that the gunshot residue test kit applied to Jackson's hands soon after the shooting did not reveal the presence of any gunshot residue. Manasian noted that gunshot residue generally does not adhere well to surfaces and easily can be washed off hands.

{¶ 8} Jackson testified in his own defense as follows. He and Edwards lived together and had three children during their relationship. Prior to the shooting, two of the

children were in the custody of Franklin County Children Services. Edwards blamed Jackson and his family for those children being removed from their home. At approximately 5:00 a.m., August 19, 2021, and after Edwards was out partying, she returned to their apartment, smelling like alcohol and marijuana. Edwards became angry at Jackson when he told her he was going to take their daughter and leave. She retrieved a firearm from a closet. Edwards confronted Jackson with the weapon, and they physically struggled. He grabbed her wrist trying to take the weapon from her, the weapon discharged while in her hand, and then she dropped it. Jackson picked up the firearm, took it into the bathroom, and dropped it into the back of the toilet. He then called the police and tried to apply pressure to the wound to Edwards' abdomen. Jackson denied shooting Edwards, washing his hands after the shooting, or otherwise placing his hands in water.

{¶ 9} The parties stipulated that Jackson had a prior felony conviction, namely aggravated assault in 2017. The parties also stipulated that the cause of Edwards' death was a gunshot wound to her torso, and that DNA of both Edwards and Jackson was found on the firearm found at the scene.

{¶ 10} Following deliberations, the jury found Jackson not guilty on one of the murder counts (purposeful murder), but guilty on the other murder count (felony murder) and the tampering with evidence count. The jury also reached factual findings establishing the firearm specifications. The trial court then found Jackson guilty of having a weapon while under disability. For these offenses, the trial court imposed an aggregate prison sentence of 18-years to life.

{¶ 11} Jackson timely appeals.

## II. Assignment of Error

{¶ 12} Jackson assigns the following sole assignment of error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of murder and tampering with evidence, as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III. Discussion

{¶ 13} In his sole assignment of error, Jackson alleges there was insufficient evidence to support his murder and tampering with evidence convictions, and that these convictions were against the manifest weight of the evidence. This assignment of error lacks merit.

## A. Sufficiency of the Evidence

{¶ 14} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 15} Here, the jury found Jackson guilty of one count of murder and one count of tampering with evidence, and the trial court found Jackson guilty of one count of having a weapon while under disability.[1] R.C. 2903.02(B) states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence." This offense is known as "felony murder," and felonious assault is an example of an offense of violence. Under R.C. 2903.11(A)(1), "[n]o person shall knowingly * * * [c]ause serious physical harm to another." As to the offense of tampering with evidence, R.C. 2921.12(A)(1) states "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 16} Jackson does not directly challenge the evidentiary establishment of any specific element of these offenses; instead, he argues Edwards' death was the result of their physical struggle for control of the firearm after Edwards angrily confronted Jackson for suggesting their third child, like the other two, would be removed from her care. Jackson acknowledges his DNA was found on the firearm, but he explains this was because he

---

[1] Jackson's assignment of error does not challenge his weapon while under disability conviction.

picked up the firearm and placed it in the toilet after Edwards was shot. Relatedly, he asserts the absence of gunshot residue on his hands indicates he was not near the firearm when it discharged, and therefore he did not pull the trigger. When viewed in favor of the prosecution, however, the evidence demonstrated all the elements of murder and tampering with evidence.

{¶ 17} The evidence showed that Edwards was fatally shot one time in the abdomen. Jackson testified that, although he was physically struggling with Edwards when she was shot, he did not pull the trigger of the firearm in Edwards' possession. He suggests the firearm may have been jostled enough to cause it to discharge the projectile, without anyone pulling the trigger, or Edwards herself pulled the trigger. But testimony indicated that it would be very unlikely for the weapon to fire unless the trigger was pulled. Immediately after being shot, Edwards begged for aid from others in the area, knocking on the neighbor's door and saying "help" to someone entering the apartment building. This reasonably indicated she was trying to get away from Jackson after being shot. Although no gunshot residue was found on Jackson's hands, this fact did not necessarily establish that he did not fire the weapon, as the evidence also demonstrated that his DNA was found on the weapon, gunshot residue is easily washed off, and, immediately after the shooting, Jackson placed the fired weapon inside the covered water tank behind the apartment's toilet. Thus, the jury reasonably found that Jackson knowingly pulled the trigger and shot Edwards, killing her. Further, Jackson's placement of the firearm in the water tank reasonably demonstrated his intent to hide the weapon used to shoot Edwards, clearly a piece of physical evidence that would be pertinent to an investigation of her death. In sum, the evidence reasonably established all the elements of felony murder and tampering with evidence.

{¶ 18} Thus, there was sufficient evidence to support Jackson's convictions.

## B. Manifest Weight of the Evidence

{¶ 19} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the [manifest] weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

**{¶ 20}** An appellate court considering a manifest-weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶ 21}** As discussed above, Jackson posits that the firearm somehow discharged without him pulling the trigger, after he and Edwards engaged in an altercation arising from her aggressive reaction to possibly losing custody of another child. He testified that when he confronted Edwards about another night of her carousing, she became enraged and retrieved the firearm, which somehow went off when he struggled with her to get control of it. He argues the absence of gunshot residue on his hands heavily weighed against a finding that he pulled the firearm's trigger. But the absence of gunshot residue on his hands does not necessarily negate the inference that he pulled the trigger, as that type of residue is easily removed with water. Further, Jackson's DNA was on the weapon, and he admitted to immediately placing the firearm in the water tank behind the toilet. Thus, while there was some conflicting evidence at trial, the jury was in the best position to evaluate the evidence and resolve any disputed facts, including the central disputed fact of whether Jackson pulled the firearm's trigger, killing Edwards.

**{¶ 22}** For these reasons, we find Jackson's convictions were not against the manifest weight of the evidence.

**{¶ 23}** Accordingly, we overrule Jackson's sole assignment of error.

## IV. Disposition

{¶ 24} Having overruled Jackson's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.