OPINION
{¶ 1} Defendant-appellant, Clarence Freeman (hereinafter "Freeman"), appeals the judgment of the Marion County Court of Common Pleas, finding him guilty of possession of cocaine, trafficking in cocaine and tampering with evidence.
 {¶ 2} On November 11, 2003, officers from the Marion Police Department executed a search warrant on 492 Prospect Street in Marion, Ohio, a house that Freeman was staying at with Alan Howe and William Sharp. During the search, police recovered a black leather coat from the room in which Freeman was staying. Inside the breast pocket of the leather coat, officers found Freeman's wallet, containing his identification and credit cards, and a rock of crack cocaine which weighed 11.64 grams. In other rooms of the home, the officers recovered two notebook ledgers, drug paraphernalia, empty plastic baggies and cash in the amount of $392.00.
 {¶ 3} As a result of the items recovered from the home, Freeman was arrested. On November 12, 2003, after his arrest, Freeman was served with a search warrant to obtain his urine. Freeman failed to provide his urine for testing.
 {¶ 4} Freeman was subsequently indicted on one count of Possession of Cocaine, in violation of R.C. 2925.11; one count of Trafficking in Cocaine, in violation of R.C. 2925.03, based on the evidence found during the search of Howe and Sharp's home; and one count of Tampering with Evidence, in violation of R.C. 2921.12, for refusing to provide a urine sample.
 {¶ 5} Following a jury trial, Freeman was found guilty on all charges. On October 7, 2004, Freeman was sentenced to five years in prison for Possession of Cocaine, eleven months in prison for Trafficking in Cocaine and one year in prison for Tampering with Evidence. The trial court further ordered that the possession and trafficking sentences be served concurrently, but it ordered the tampering with evidence sentence to be served consecutive to the possession and trafficking sentences for a total term of incarceration of six years.
 {¶ 6} It is from this verdict and sentence that Freeman now appeals, setting forth two assignments of error for our review.
ASSIGNMENT OF ERROR NO. I
 There is insufficient evidence to sustain the convictions because (1)there is no evidence that the defendant possessed cocaine; (2) there isno evidence that the defendant sold or offered to sell cocaine; and (3)there is no evidence that the defendant tampered with evidence.
 ASSIGNMENT OF ERROR NO. II
 The convictions were against the manifest weight of the evidencebecause the evidence does not support (1) that the defendant possessedcocaine; (2) that the defendant sold or offered to sell cocaine; and (3)that the defendant tampered with evidence.
 {¶ 7} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 9} On appeal, Freeman addresses both the legal sufficiency and manifest weight issues with regard to the three charges against him: possession, trafficking and tampering with evidence. With regard to the possession charge, he asserts that he did not have actual possession of the crack cocaine. He further argues that his possession of the crack cocaine in the pocket of a jacket he was never seen wearing cannot be inferred solely from his being an occupant in the room where the jacket was found.
 {¶ 10} R.C. 2925.11 defines the crime of possession and provides, "[n]o person shall knowingly obtain, possess, or use a controlled substance." Possession, however, may be actual or constructive. State v.Butler (1989), 42 Ohio St.3d 174, 176, 538 N.E.2d 98.
 {¶ 11} "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Messer (1995),107 Ohio App.3d 51, 56, 667 N.E.2d 1022. Circumstantial evidence is itself sufficient to establish dominion and control over a controlled substance. See State v. Jenks (1991), 61 Ohio St.3d at 272. Thus, "[c]ircumstantial evidence that the defendant was located very close to readily usable drugs may support a conclusion that the defendant had constructive possession." State v. Gibson (May 6, 1998), 9th Dist. No. 18540, citing State v. Barr (1993), 86 Ohio App.3d 227, 235. Ownership of the drugs need not be established for constructive possession. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing State v. Mann, (1993) 93 Ohio App.3d 301, 308.
 {¶ 12} At trial, evidence was introduced that Marion police found more than 10 grams of crack cocaine in the pocket of a jacket that also contained Freeman's wallet, identification and credit cards. During the execution of the search warrant, police observed Freeman coming out of the bedroom where the jacket was found. Witness testimony at trial further established that the bedroom where the leather coat was found was the room in which Freeman stayed.
 {¶ 13} After a review of this evidence, we do not find, as a matter of law, Freeman's conviction for Possession of Crack Cocaine was based upon insufficient evidence, as we find that the evidence introduced could convince a rational trier of fact of Freeman's guilt beyond a reasonable doubt. Neither do we find that Freeman's conviction for possession was against the manifest weight of the evidence. We find that the jury could reasonably infer that because his personal effects were found in the same pocket, Freeman possessed the crack cocaine in the leather coat. Based on this evidence, we cannot say that the jury clearly lost its way.
 {¶ 14} With regard to his conviction for trafficking, Freeman asserts that nothing in the record supports the conclusion that he sold or offered to sell crack "on or about November 11, 2003," which was the date alleged in the indictment. Freeman claims that these assertions are supported by the fact that Howe and Sharp provided no testimony that Freeman sold or offered to sell drugs on that day and the police did not observe any drug transactions on that day. Moreover, Freeman asserts that the police never even observed anyone entering the home to purchase drugs.[1]
 {¶ 15} R.C. 2925.03(A)(1) sets forth the offense of trafficking and provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." At trial, the following evidence was adduced: Marion police had been watching the home at 492 Prospect and the amount of activity there led them to suspect the occupants were engaged in a "crack house" operation. Based on their observations, the police conducted two trash pulls, one on November 3, 2003 and one on November 10, 2003. In the trash they found plastic baggies, a large quantity of cigarette lighters, a glass stem used to smoke crack cocaine, sections of plastic straws, marijuana roaches and mail of the occupants Howe and Sharp. As a result of the trash pulls, the officers obtained a warrant to search the home. Inside the home, the officers recovered several small rocks of crack cocaine and one large rock which was found in the pocket of the leather coat. The police also obtained two spiral notebooks containing lists of names and phone numbers.
 {¶ 16} Upon the questioning of Freeman following the execution of the search warrant, Freeman stated that he was visiting Howe and Sharp but did not live in the home. Howe and Sharp stated that Freeman did not live in the home but the bedroom where the leather coat was found was his room and they allowed him to sell crack cocaine from that room. During his testimony at trial, Sharp elaborated on this. He stated Howe and Sharp set up the room for Freeman and Freeman would go get crack cocaine and come back and sell it from the home at 492 Prospect. Sharp testified that when Freeman brought the crack into the home it would be in a "big ball" and that he would take a razor blade and cut it into pieces for individual sales. Sharp testified that there were many people who came to the house to purchase crack cocaine. He further stated that the pedestrian traffic there "was terrible" and people were coming and going "all night long; sometimes all day." At the conclusion of Sharp's testimony, he was asked, "[p]rior to the police knocking on the door [on November 11, 2003] was Clarence [Freeman] selling crack out of your place?" Sharp responded "yes."
 {¶ 17} In addition to Sharp's testimony, the state introduced the testimony of Howe, the other occupant of the house. Howe's testimony mirrored what Sharp had stated: Freeman would go get a large rock of crack cocaine, bring it back to the house at 492 Prospect, cut it into smaller pieces and sell it from the house.
 {¶ 18} The testimony of Sharp and Howe, if believed, would serve as sufficient evidence to support the conclusion that on or about November 11, 2003, Freeman was knowingly selling a controlled substance, as provided in R.C. 2925.03. Accordingly, we do not find that there is insufficient evidence to support Freeman's conviction for trafficking.
 {¶ 19} In addition, after examining the record and weighing the evidence, we can not conclude that Freeman's conviction for trafficking is against the manifest weight of the evidence. The testimony of Sharp and Howe established that Freeman routinely sold crack cocaine from the house at 492 Prospect and that he was selling crack cocaine before the police came to the door to execute the search warrant on November 11, 2003. The jury determined that this testimony was credible and we do not find that it lost its way in doing so.
 {¶ 20} Finally, Freeman alleges error in his conviction for Tampering with Evidence. Freeman asserts that, as a matter of law, a defendant's refusal to comply with a search warrant for his urine does not amount to tampering with evidence.
 {¶ 21} At trial, the prosecution argued that Freeman's failure to produce a sample of urine, pursuant to the search warrant, constituted concealment as used in R.C. 2921.12, which provides in pertinent part:
No person, knowing that an official proceeding or investigation is inprogress, or is about to be or likely to be instituted, shall do any ofthe following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing,with purpose to impair its value or availability as evidence in suchproceeding or investigation;
 {¶ 22} Generally, violating R.C. 2921.12(A)(1) by concealing physical evidence requires some overt act of concealment by the defendant. Statev. Csizma (April 13, 1987), 2d Dist. No. 9649. A mere failure to volunteer information has been held not to rise to the level of tampering with evidence. Id.
 {¶ 23} In the case sub judice, the officers presented Freeman with a warrant for a urine sample. The warrant stated that "[i]n the event that Clarence B. Freeman does not voluntarily provide the urine sample pursuant to the search warrant herein granted, any reasonable medical procedures, including catheterization at a local hospital, may be used to secure said urine sample." Freeman refused to give a sample. The record reflects no further action by the police to execute the warrant.
 {¶ 24} After reviewing the evidence before us, we are unable to conclude that Freeman's mere refusal to provide a sample of urine constituted an overt act of "concealment" as the term is employed in the statute. Further, there is no evidence that Freeman otherwise altered, destroyed or removed the sample, pursuant to R.C. 2921.12, after his refusal. Consequently, a rational trier of fact could not have found each element of Tampering with Evidence proven beyond a reasonable doubt.
 {¶ 25} Our conclusion in this matter may have been different had the state produced some evidence that, after his refusal, Freeman had a continuing opportunity to provide a sample but, without doing so, disposed of his urine instead. However, on the evidence before the jury, we find that Freeman's failure to assist the police in executing the search warrant for a sample of his urine, without more, could not rise to the level of tampering with evidence pursuant to R.C. 2921.12. Accordingly, we hold that Freeman's conviction for Tampering with Evidence was based on insufficient evidence. Freeman's argument that the conviction is also against the manifest weight of the evidence is rendered moot.
 {¶ 26} Freeman's first assignment of error is hereby, overruled in part and sustained in part. Freeman's second assignment of error is overruled.
 {¶ 27} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as it relates to Freeman's conviction for Tampering with Evidence and remand the matter for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is hereby affirmed.
Judgment affirmed in part and reversed in part.
 BRYANT, J., concurs.
 ROGERS, J., concurs separately.
[1] We note, for the record, that although Freeman was indicted on first degree felony trafficking, the trial court reduced the charge to a felony of the fifth degree following the jury's verdict and sentenced Freeman accordingly. While the trial court found there was adequate proof that Freeman was trafficking in crack concaine, it explained that there was not adequate proof of trafficking in a specific amount of crack cocaine that would meet the burden of proof for a first degree felony. The state did not appeal this decision.