**[Cite as *State v. Gill*, 2026-Ohio-748.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                    :

      Plaintiff-Appellant/Cross-                    :
      Appellee,                                                       No. 25AP-738
                                                                   :     (C.P.C. No. 23CR-0696)

v.
                                                                   :     (REGULAR CALENDAR)

Lee Gill,
                                                                   :

      Defendant-Appellee/Cross-
      Appellant.                                               :

---

D E C I S I O N

Rendered on March 5, 2026

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Jeffrey D. Devereaux* for appellant/cross-appellee.

**On brief:** *The Tyack Law Firm Co., LPA, James P. Tyack*, and *Cecilia M. Hardy* for appellee/cross-appellant.

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant/cross-appellee, State of Ohio, appeals from a judgment entry of the Franklin County Court of Common Pleas finding defendant-appellee/cross-appellant, Lee Gill, guilty of tampering with evidence and having weapons while under disability. Mr. Gill cross-appeals from the same judgment entry. For the following reasons, we reverse and vacate the convictions.

## I. Facts and Procedural History

{¶ 2} By indictment filed February 14, 2023, the state charged Mr. Gill with one count of purposeful murder, in violation of R.C. 2903.02(A)(1), an unclassified felony (Count 1); one count of felony murder, in violation of R.C. 2903.02(A)(2), an unclassified felony (Count 2); one count of felonious assault, in violation of R.C. 2903.11, a second-degree felony (Count 3); one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162, a first-degree felony (Count 4); one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony (Count 5); one count of improperly discharging a firearm at or into a habitation or a school safety zone, in violation of R.C. 2923.161, a second-degree felony (Count 6); and one count of having weapons while under disability, in violation of R.C. 2923.13, a third-degree felony (Count 7). Counts 1 through 6 contained accompanying firearm specifications. The charges related to the October 22, 2022 fatal shooting of J.C. and the nonfatal shooting of J.L. outside of Platform Lounge in Columbus. The state separately issued an indictment charging co-defendant Charles Williams with the same offenses as Counts 1 through 6. Mr. Gill entered a plea of not guilty.

{¶ 3} On February 26, 2024, Mr. Gill filed an entry with the trial court waiving his right to trial by jury as to Count 7, having weapons while under disability. The entry stated:

> I Lee Gill, Defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a Judge of the Court in which said cause may be pending. I fully understand that under the laws of this State, I have a constitutional right to a trial by a jury. This as to Count 7 only; Weapon Under Disability, F-3.

(Feb. 26, 2024 Entry.)

{¶ 4} The next day, on February 27, 2024, the matter proceeded to a joint trial of Mr. Gill and his co-defendant, Mr. Williams. The state called 11 witnesses. In *State v. Williams*, 2025-Ohio-1151 (10th Dist.), we summarized the evidence the state presented at the February 2024 trial as follows:

> At all relevant times, Mr. Gill and Mr. Williams worked security for Platform Lounge. (*See* Tr. Vol. I at 42-47.) On October 22, 2022, J.C. and J.L. went to Platform Lounge for a few drinks. (Tr. Vol. I at 39-40, 61-63.) Around 11:40 p.m., the

two men decided to leave. (Tr. Vol. I at 42. *See* Ex. A3, Channel 13.) On their way out, Mr. Gill approached J.C. about leaving the bar with an alcoholic drink in his hand. (Tr. Vol. I at 42-43, 60-61, 69-70; Ex. A3, Channel 13.) The exchange between Mr. Gill and J.C. became heated, but J.L. was able to deescalate the situation. (Tr. Vol. I at 43, 46-48.) J.C. and J.L then got into J.L.'s white Dodge Challenger, which was parked in the Platform Lounge parking lot. (Tr. Vol. I at 43-44, 50, 55-56.)

At trial, J.L. testified that as they were preparing to leave, he "heard a shot and then . . . heard a ricochet come through the passenger back panel window." (Tr. Vol. I at 50.) In response, J.L. (who was a licensed firearm permit holder) grabbed his firearm located on the back floorboard of his vehicle and exited his car. (Tr. Vol. I at 48-50, 56-57.) Surveillance video footage of the parking lot showed Mr. Gill, Mr. Williams, and a third man, Dominic Elmore, standing around the rear passenger side of J.L.'s parked car at 11:45 p.m. when J.L. opens the driver's door, the three men suddenly jump back, J.L. exits the vehicle while ducking, both Mr. Elmore and Mr. Gill pull out handguns, and Mr. Elmore begins rapidly firing at the car. (*See* Feb. 28, 2024 Tr. Vol. II at 370-76, 388, 416-17, 427-33; Ex. A3, Channel 16; Ex. A3, Channel 14.) In the video footage, while Mr. Williams is running away from the shooting to retrieve a rifle from the trunk of a car parked nearby (*see* Tr. Vol. II at 369-76; Ex. A3, Channel 15; Ex. A3, Channel 14; Ex. A3, Channel 13), J.C. can be seen crawling out of the driver's side door and running away from the vehicle towards Platform Lounge's south parking lot (*see* Ex. L), out of view of the surveillance camera and toward Country Club Road. (*See* Tr. Vol. I at 50, 57; Tr. Vol. II at 376-78; Ex. A3, Channel 16; Ex. L.)

Although J.L. was not injured when he exited his car, he testified he did not know about J.C.'s condition after he exited the vehicle and ran away. (*See* Tr. Vol. I at 57; Tr. Vol. II at 376-78; Ex. A3, Channel 16; Ex. L.) And, on review, it is unclear from the surveillance video footage whether J.C. had been shot at that point. (*See* Ex. A3, Channel 16.) After the shooting stopped, J.L. got back into his vehicle, drove out of the lounge's parking lot, and attempted to locate J.C. (Tr. Vol. I at 49-51, 57-58, 64-65. *See also* Tr. Vol. II at 417-24.)

Not long after the incident, J.C. was discovered lying face down on Country Club Road near Platform Lounge's south

parking lot. (*See* Tr. Vol. I at 51-52, 65, 77-81, 128-29; Tr. Vol. II at 378; Ex. Q; Ex. B29; Ex. L.) Law enforcement and medics responded to the scene, where J.C. was pronounced dead at 12:10 a.m. on October 23, 2022 and transported to the morgue. (*See* Tr. Vol. II at 346-47; Ex. E.) At trial, the forensic pathologist who conducted the autopsy examination of J.C., Dr. Russell Uptegrove, testified J.C. would have been immediately paralyzed from the penetrating gunshot wound injury to his neck and died almost instantaneously because the bullet transected his brain stem. (*See* Ex. E; Feb. 29, 2024 Tr. Vol. III at 461-69, 480-81.) Based on that testimony, we can surmise J.C. had not yet been struck when he exited J.C.'s car and ran out of view of the surveillance cameras. (*See* Ex. A3, Channel 16.) During the autopsy, Dr. Uptegrove removed four lead fragments and three copper jacket fragments from the soft tissue of J.C.'s neck, which were collected as evidence and submitted to the crime lab for analysis. (*See* Tr. Vol. III at 479-80; Ex. M92; Ex. E. *See also* Tr. Vol. II at 357-58; Ex. F.)

Evidence presented at trial established J.L.'s car was struck by multiple rounds of bullets. (*See* Tr. Vol. I at 63, 76, 204-18, 220; Ex. D; Ex. J.) Although bullet fragments and a spent projectile were found in J.L.'s vehicle, these items were not sent to the crime lab for analysis. (Tr. Vol. II at 391-92; Ex. J.) Columbus Police Department ("CPD") Detective Derek Corbin testified that, based on his experience observing shooting scenes, it was his opinion that damage to the Dodge Challenger was caused by bullets fired from outside of the vehicle. (Tr. Vol. II at 442-43.)

Police recovered 17 seventeen spent shell casings fired from multiple firearms—including three spent rifle casings—and one spent projectile from Platform Lounge's parking lot on the morning of October 23, 2022. (*See* Ex. L; Ex. B109; Tr. Vol. I at 119-21, 130-31, 135, 139-40; Tr. Vol. II at 387; Ex. F.) Additionally, a woman who lived across the street from Platform Lounge, R.C., testified about bullets striking her home while she was inside that night. (Tr. Vol. I at 33-34, 111-13, 127-28, 161, 173-74; Ex. H; Ex. B31 through B37. *But see* Tr. Vol. II at 405-06.) Her home is located approximately 50 feet from where J.C.'s body was found. (*See* Tr. Vol. I at 129; Ex. L; Ex. B30.) Police took photographs of the damage to R.C.'s home on the night of the incident. (*See* Tr. Vol. I at 111-14.) But detectives could not identify exactly what struck R.C.'s home at trial because the police did not collect any

evidence from her property. (Tr. Vol. I at 127-28; Tr. Vol. II at 405-06.)

Law enforcement reviewed surveillance video footage depicting the incident on October 24, 2022. (*See* Tr. Vol. I at 165-66; Ex. I. *See also* Ex. L (specifying locations of outdoor security cameras).) The surveillance footage from a security camera located at the south corner of the strip mall showed Mr. Gill and Mr. Williams go out of view of the camera in a southbound direction—toward the area where J.C.'s body was found (*see* Ex. L; Ex. B27)—and depicted movement suggesting a gun was fired in that area. (*See* Tr. Vol. I at 165-66, 177, 180-81; Tr. Vol. II at 378-79, 434-36. *See also* Ex. A3, Channel 16.) In that video, Mr. Gill can be seen racking the slide on his handgun backwards while walking toward Platform Lounge's south parking lot and disappearing from view of the surveillance camera for about 25 seconds. (*See* Tr. Vol. II at 378-79; Ex. A3, Channel 16.) Mr. Williams follows after Mr. Gill with his rifle in tow, disappearing from the surveillance camera's view for approximately five seconds before running back into the frame toward the lounge's front entrance. (Tr. Vol. II at 378-79; Ex. A3, Channel 16.) At 11:47 p.m., Mr. Gill, Mr. Williams, and Mr. Elmore can be seen walking into Platform Lounge together. (Ex. A3, Channel 16; Tr. Vol. II at 379.) Less than two minutes later, Mr. Gill gets into his vehicle and leaves. (Ex. A3, Channel 14; Tr. Vol. II at 369-70, 374, 380-81, 440.)

Detective Richard Bair explained that law enforcement did not initially search Platform Lounge's south parking lot when collecting evidence in the early morning of October 23, 2022 because it was not designated within the taped-off crime scene area. (*See* Tr. Vol. I at 122-24, 149, 154. *See also* Tr. Vol. II at 411-13.) After reviewing video surveillance footage depicting Mr. Gill and Mr. Williams running toward the south parking lot near where J.C.'s body was found (*see* Ex. B25; Ex. B27), detectives searched that area for additional evidence on October 24, 2022 around 12:00 p.m., approximately 36 hours after the shooting incident. (*See* Ex. I; Tr. Vol. I at 177, 187-201; Tr. Vol. II at 389-93.) Five 9mm Ruger Hornady shell casings and two spent projectiles were recovered from the south parking lot near the south corner of the strip mall. (Ex. I; Tr. Vol. I at 177, 187-201; Ex. C2; Ex. C4.) Although the shell casings were submitted to the CPD crime lab for analysis, the two spent projectiles were not. (Tr. Vol. II at 390-91. *See also* Tr. Vol. II at 407.)

At trial, J.L. identified Mr. Williams as one of the three shooters (Tr. Vol. I at 54-55) and described seeing Mr. Williams point an "AR" rifle in his direction when J.L. exited his vehicle. (Tr. Vol. I at 50, 81-82. *See also* Tr. Vol. II at 351; Ex. A3, Channel 16.) And surveillance video showed Mr. Williams pointing and firing a rifle in the direction of J.L.'s parked vehicle. (Tr. Vol. II at 363-65, 370-77, 386-87; Ex. A3, Channel 7; Ex. A3, Channel 13; Ex. A3, Channel 14; Ex. A3, Channel 15.)

Detective Corbin testified that no rifles were recovered during law enforcement's investigation of the incident. (Tr. Vol. II at 365.) We note, however, that shortly after J.L. drove away, the surveillance video footage shows Mr. Williams putting the rifle into the trunk of the car he retrieved it from, getting it back out a few minutes later, and taking the rifle into Platform Lounge around 11:50 p.m. (Tr. Vol. II at 363-65; Ex. A3, Channel 7; Ex. A3, Channel 14.) Thus, although he could not make any comparison to any particular rifle since none were recovered in connection with this incident, CPD firearms examiner Caleb Worley opined the three rifle casings recovered from Platform Lounge's front parking lot (*see* Ex. H; Ex. L) were fired from the same rifle. (Tr. Vol. II at 259-61, 274-75; Ex. F, Firearms Report at 1; Ex. G20 through G24.) Of note, no rifle casings were recovered from Platform Lounge's south parking lot. (Tr. Vol. II at 389; Ex. I; Ex. L.)

Law enforcement also identified Mr. Gill and Mr. Elmore as the other two [individuals] involved in the incident. (*See* Tr. Vol. II at 348-52, 363-65, 368-82; Ex. A3, Channel 13.)

Regarding Mr. Elmore, the surveillance video depicted him firing a handgun multiple times at J.L.'s vehicle while it was parked in Platform Lounge's front parking lot. (*See* Ex. A3, Channel 16.) Detectives subsequently executed a search warrant upon his residence and recovered a semi-automatic Glock 9mm Luger pistol. (Tr. Vol. II at 359-60, 383-85. *See also* Ex. H; Ex. R.) After comparing test fires from that pistol to the ballistics evidence from the scene, firearms examiner Worley opined that fourteen of the shell casings recovered from Platform Lounge's front parking lot on October 23, 2022 (*see* Ex. H; Ex. L) were fired by the pistol seized from Mr. Elmore's home. (Tr. Vol. II at 258-60, 268-73, 277-79, 309, 314, 359-60, 402-03; Ex. F, Firearms Report at 1-2; Ex. G1 through G19; Ex. G31 through G34.) Mr. Worley further

determined the spent Hornady 9mm Luger shell casings recovered from the south parking lot were not fired by that Glock pistol. (*See* Tr. Vol. II at 280; Ex. F; Ex. G36.)

Mr. Gill was also depicted on the surveillance video pointing a handgun at J.L.'s parked car multiple times. (*See* Ex. A3, Channel 16; Ex. A3, Channel 13; Ex. A3, Channel 14. *See* Tr. Vol. II at 433.) The handgun used by Mr. Gill was never recovered by law enforcement. (*See* Tr. Vol. II at 381, 388.) At trial, firearms examiner Worley testified that one of the spent Hornady 9mm Luger shell casings recovered from Platform Lounge's front parking lot on October 23, 2022 (*see* Ex. H; Ex. L) and all five of the spent Hornady 9mm Luger shell casings recovered from the south parking lot on October 24, 2022 (*see* Ex. I) were fired from the same gun. (Tr. Vol. II at 261-63, 275-77; Ex. F, Firearms Report at 1; Ex. G25 through G30.) Although another handgun (a Ruger 9mm Luger pistol) was recovered from Platform Lounge's office by police on October 23, 2022 (Ex. H), Mr. Worley testified that none of the shell casings recovered from either of Platform Lounge's parking lots were fired from that gun. (Tr. Vol. II at 261-63, 279-77, 281; Ex. G35. *See also* Ex. F.)

J.L. acknowledged he did not see who shot J.C. or know exactly when J.C. was shot. (Tr. Vol. I at 64, 76. *See also* Tr. Vol. II at 418.) At trial, firearms examiner Worley opined that the four lead fragments and the three copper jacket fragments recovered from J.C.'s neck by the coroner were not fired by any of the three pistols seized by police—one from J.L.'s impounded car, another from Platform Lounge's office, and one from Mr. Elmore's residence—in connection with this incident. (Ex. F at 2; Tr. Vol. II at 262-63, 280-82; Ex. G37 through G41.) Mr. Worley was unable to determine the caliber and type (e.g., full metal jacket or hollow point) of the bullet fragments[ ] recovered from J.C.'s neck "due to deformation" and their small size. (Ex. F, Firearms Worksheet A at 7. *See also* Tr. Vol. II at 266-68, 284-86, 290-92, 312-13.)

Based on his visual observation of one of the copper jacket fragments recovered from J.C.'s neck, Mr. Worley noted that particular fragment "appear[ed] to be the tip of the nose section of a bullet," which would be "consistent with those [types] of bullets typically loaded in rifle cartridges." (Ex. F, Firearms Worksheet A at 7. *See also* Tr. Vol. II at 266-68, 312, 315.) But, on cross-examination, Mr. Worley admitted "[t]here were no rifling characteristics on that particular

fragment" and he could not actually say *that* copper jacket fragment was the tip of a rifle bullet. (Tr. Vol. II at 285-86.) Notably, Mr. Worley was not asked to analyze any of the projectiles or bullet fragments observed (and, in some instances, recovered from) either of Platform Lounge's two parking lots, the nearby residence struck by bullets, or J.L.'s car. (*See* Tr. Vol. II at 288-89, 298-99.)

J.L. maintained he did not retrieve his firearm—a .40-caliber Smith & Wesson semi-automatic pistol (Tr. Vol. I at 71, 82; Ex. J; Tr. Vol. II at 383)—from the floorboard of his car until after the shooting began. (Tr. Vol. I at 48-49, 57, 70-72.) He also maintained his firearm was not discharged that night. (Tr. Vol. I at 49, 57, 82-83.) Evidence presented at trial supported his claim. Indeed, after law enforcement recovered the Smith & Wesson pistol from J.L.'s impounded vehicle, test fires from that handgun were compared to the ballistics evidence recovered from the scene. (*See* Ex. J; Ex. F; Tr. Vol. II at 280-81, 311-12, 314, 360.) Mr. Worley opined the Smith & Wesson pistol recovered from J.L.'s vehicle did not fire any of the spent shell casings recovered from the scene or the spent bullet fragments recovered from J.C.'s neck during the autopsy. (*See* Ex. F; Tr. Vol. II at 280-81, 311-12, 314, 360. *See also* Tr. Vol. II at 441.) Moreover, a fully loaded magazine and chambered round were recovered from the Smith & Wesson pistol law enforcement found in J.L.'s vehicle. (*See* Ex. J. *See also* Tr. Vol. II at 360.) J.L. also testified that J.C. was unarmed on the night of the incident (Tr. Vol. I at 49, 53, 71, 77), and no evidence presented at trial contradicted that testimony (*see* Tr. Vol. II at 360-61, 397, 439).

*Williams* at ¶ 7-22.

{¶ 5} On the third day of trial, after Dr. Uptegrove concluded his testimony, the state rested its case. (Tr. Vol. III at 489.) Specifically, the following exchange occurred:

> THE COURT: Counsel for the State, do you have any additional witnesses?
>
> [THE STATE]: Judge, we do not. The State would rest pending admission of the exhibits that we've used for past few days.

(Tr. Vol. III at 489.) The trial court granted the state a five-minute recess to organize its exhibits. (Tr. Vol. III at 490.) The state went through each of its exhibits, and they were

admitted by the trial court. (Tr. Vol. III at 490-500.) Thereafter, both Mr. Williams and Mr. Gill made Crim.R. 29 motions for acquittal. (Tr. Vol. III at 500-07.) Counsel for Mr. Gill argued the state presented insufficient evidence to support any of the charged offenses. (Tr. Vol. III at 504.) Relevant to the charges of tampering with evidence and having a weapon while under disability, Mr. Gill's counsel argued:

> [DEFENSE COUNSEL]: . . . As it relates to tampering with evidence, I'll, again, adopt [Mr. Gill's] arguments as it relates to the elements and simply state that you know based on the evidence that Mr. Gill was actually not there when the police arrived. There is no evidence suggesting that he was aware of any investigation ongoing and certainly no evidence affirmatively establishing that he did anything to impede an investigation.
>
> Your Honor, other than that, at this time I also believe the State has failed to comply with the obligations under the weapons under disability charges. There is no evidence establishing that Mr. Gill is a convicted felon, there is also insufficient evidence to establish that he was holding a firearm. Thank you.
>
> THE COURT: Thank you. On behalf of the State?
>
> [THE STATE]: Judge, just a little bit of housekeeping, I think we had waived the [weapons under disability], so I don't think that was -- maybe something that we can deal with later on, at least the weapon under disability. I believe that was waived at least in front of the jury. Is that --
>
> THE COURT: It was waived in front of the jury.
>
> [THE STATE]: So I'm just going to address the other counts, one through six, which I believe are the same for both Defendants.

(Tr. Vol. III at 506-08.) The trial court then denied the Crim.R. 29 motions, finding "there is sufficient evidence for all of these counts to go to the jury." (Tr. Vol. III at 513.) Subsequently, the state reiterated that it "formally rest[ed]" its case. (Tr. Vol. III at 514.)

{¶ 6} After the defense rested, the trial court submitted the case to the jury. (Tr. Vol. III at 513-15, 617.) Following deliberations, the jury found Mr. Williams guilty of felony murder, felonious assault, unlawful discharge of a firearm upon or over a public road or

highway, and tampering with evidence, along with their attendant firearm specifications. (Tr. Vol. IV at 630-33.) The jury found Mr. Williams not guilty of purposeful murder and improper discharge of a firearm into an occupied habitation. (Tr. Vol. IV at 630, 633.) The jury found Mr. Gill guilty of Count 5, tampering with evidence, and the accompanying firearm specification, but could not reach a unanimous decision as to Counts 1, 2, 3, 4, and 6. (Tr. Vol. IV at 630-33.) The trial court declared a mistrial on Counts 1, 2, 3, 4, and 6 with respect to Mr. Gill. (Tr. Vol. IV at 633.)

{¶ 7} Mr. Gill renewed his Crim.R. 29 motion after the jury returned its verdict. (Tr. Vol. IV at 637.) Defense counsel argued:

> Your Honor, I'm sorry, if I may, I think we can follow the Rule 29 motion up with a 29(C) written motion, which I will do regarding the [weapons under disability], but I just want to make sure that there's no potential for a waiver on the [weapons under disability], that the trial is completed, that State has rested, the State has confirmed that it has rested. I don't believe there's a different time track for a court trial versus a jury trial when the State is presenting evidence and decisions are made on cross examination, confrontation clause issues and others. And as such, we would ask the Court to grant that motion at this time.
>
> THE COURT: All right. We'll have you file the motion, the State can respond, and we'll deal with it accordingly.

(Tr. Vol. IV at 641.)

{¶ 8} On March 14, 2024, Mr. Gill filed a written motion for judgment of acquittal pursuant to Crim.R. 29(C). Mr. Gill again argued, in relevant part, that the state failed to present sufficient evidence for both Count 5, tampering with evidence, and Count 7, having weapons while under disability. At a March 21, 2024 hearing, the trial court denied the Crim.R. 29 motion, stating:

> I'll start with count five, that was the one, tampering with evidence with the one-year gun specification and that's the one that the jury found the Defendant guilty of the count and the specification. Given precedent and the jury's verdict and the Court's prior ruling as to the Rule 29 motion on that specific count, the Court finds that there was sufficient evidence to support the verdict. The Court's not going to overturn that verdict or grant a Rule 29 motion as to that count.

. . .

> With respect to count seven, the Court is not going to grant a Rule 29 on that either. The Defendant did waive jury trial, agreed to have that tried by the Court, and it has been the practice of this Court that those counts -- when that happens, whether it is a separate count or a specification, that those in some part often tried -- you know, you have the trial, the jury does what they're going to do, and then the Court will take further evidence on those counts or specifications and make a ruling at that time. So the Court -- again, that count was not -- was waived as far as right to jury. It was requested that the Court rule on it and the Court has not made a ruling yet and has not had the parties give the rest of the evidence on that. And the Court finds that there's no double jeopardy because, again, he has not been fully tried on that count. So at this point, the Court is denying the Rule 29 motion in full.

(Mar. 21, 2024 Tr. at 6-7.)

{¶ 9} During a July 2, 2024 bond hearing, Mr. Gill again asked the court to "make a ruling on whether to dismiss" the having weapons under disability charge. (July 2, 2024 Tr. at 3.) The trial court denied the motion. (July 2, 2024 Tr. at 6.)

{¶ 10} On May 2, 2025, more than a year after the verdict in the first trial, Mr. Gill filed a motion for decision and verdict requesting the trial court render a verdict on Count 7, having weapons while under disability. Three days later, on May 5, 2025, Mr. Gill filed a renewed motion for acquittal and amended motion for decision and verdict, asking the trial court to dismiss Count 7 under Crim.R. 29(C) or, alternatively, render a decision and verdict on Count 7.

{¶ 11} Over the objection of defense counsel, the trial court allowed the state to enter evidence related to Count 7. (May 5, 2025[1] Tr. at 3-5.) For the first time, the state submitted documentation of Mr. Gill's prior felony conviction. (May 5, 2025 Tr. at 4.) The trial court

---

[1] The transcript of the May 5, 2025 proceedings appears in the record with the title page "TRANSCRIPT EXCERPT OF JURY TRIAL PROCEEDINGS Before the Honorable Kim Brown, Judge, on Wednesday, August 27, 2025." The second page of the transcript excerpt indicates the proceedings occurred "Monday Morning Session[,] May 5, 2025[,] 10:38 a.m." Thus, despite the listed caption date appearing on the title page of the excerpted transcript, we refer to the transcript of these proceedings as the May 5, 2025 transcript.

orally announced it "finds the Defendant is guilty of count seven, having weapons under disability," noting its finding "is consistent with the jury verdict on the one count of the tampering with evidence with a one-year firearm specification, so -- and the testimony that did come in at the first trial in this matter. So the Court does find the Defendant guilty on that count." (May 5, 2025 Tr. at 7-8.) Immediately following its oral ruling on Count 7, the trial court commenced the second jury trial on Counts 1, 2, 3, 4, and 6. (May 5, 2025 Tr. at 17.) Following deliberations, the jury found Mr. Gill not guilty of all the retried counts.

{¶ 12} In an August 29, 2025 judgment entry, the trial court stated:

> On May 4, 2025, the State of Ohio was represented by Assistant Prosecuting Attorney J. Wong/M. Holvey and the Defendant was represented by counsel, J. Landusky, Esq.
>
> On that date, the Court held a hearing on Count Seven. The Court found the Defendant as follows:
>
> GUILTY of COUNT SEVEN of the Indictment, to-wit: WEAPON UNDER DISABILITY, in violation of Section 2923.13 of the Ohio Revised Code, being a Felony of the Third Degree.

(Emphasis omitted.) The trial court sentenced Mr. Gill to three years in prison on Count 5, tampering with evidence, with a mandatory consecutive one-year sentence on the firearm specification, plus an additional one year on Count 7, having weapons while under disability, to be served consecutively for an aggregate sentence of five years in prison. Pursuant to the court's sentencing entry, only the one-year firearm specification sentence was mandatory. Both the state and Mr. Gill timely appeal.

## II. Assignments of Error

{¶ 13} The state raises the following sole assignment of error for our review:

> The trial court's imposition of a non-mandatory prison term on the underlying felony in Count Five is clearly and convincingly contrary to law.

{¶ 14} Additionally, on cross-appeal, Mr. Gill raises the following five assignments of error for our review:

> [I.] The State presented insufficient evidence to convict Mr. Gill of Having Weapons While Under Disability and therefore violated his Due Process Rights under the Fifth and Fourteenth

Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

[II.] Defendant's rights under the Fifth Amendment, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were violated by the trial court's handling of the Having Weapons While Under Disability charge.

[III.] Defendant's conviction for Tampering with Evidence is not supported by sufficient evidence and therefore violated his Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

[IV]. Mr. Gill's conviction for the one-year firearm specification is not supported by sufficient evidence and therefore violated his Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

[V.] The convictions for Having Weapons While Under Disability, Tampering with Evidence, and the Firearm Specification are against the manifest weight of the evidence.

For ease of discussion, we address the parties' assignments of error out of order.

## III. Mr. Gill's First and Third Assignments of Error—Sufficiency of the Evidence

{¶ 15} In his first assignment of error, Mr. Gill argues the state presented insufficient evidence to convict him of having weapons while under disability. In his third assignment of error, Mr. Gill argues the state presented insufficient evidence to convict him of tampering with evidence. Because both of these assignments of error involve the sufficiency of the evidence, we address them jointly.

### A. Legal Standard and Standard of Review

{¶ 16} Whether evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state met its burden of production at trial. *See, e.g., State v. Smith*, 2004-Ohio-4786, ¶ 16 (10th Dist.); *State v. Frazier*, 2007-Ohio-11, ¶ 7 (10th Dist.); *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We do not weigh the evidence but instead determine " 'whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17}  In evaluating a sufficiency challenge, we assume the state's witnesses testified truthfully and determine whether that testimony and any other evidence presented at trial satisfied each element of the offense.  *See State v. Watkins*, 2016-Ohio-8272, ¶ 31 (10th Dist.), quoting *State v. Hill*, 2008-Ohio-4257, ¶ 41 (10th Dist.).  Thus, evidence is sufficient to support a conviction where, if believed, that evidence would allow any rational trier of fact to conclude that the state proved each element of the offense beyond a reasonable doubt.  *Frazier* at ¶ 7, citing *Jenks* at paragraph two of the syllabus.

### B.  Having Weapons While Under Disability

{¶ 18}  Mr. Gill argues the state presented insufficient evidence to convict him of having weapons while under disability.

{¶ 19}  In relevant part, R.C. 2923.13(A)(3) provides that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."  Mr. Gill asserts the state failed to present sufficient evidence that he was under any disability on October 22, 2022 and that he possessed an operable firearm within the meaning of R.C. 2923.11.

{¶ 20}  As outlined above, the state formally rested its case on the third day of trial pending the admission of exhibits. (Tr. Vol. III at 489.)  After the state went through each of its exhibits and rested its case, Mr. Gill made a Crim.R. 29(A) motion for acquittal, arguing the state failed to present any evidence of disability under R.C. 2923.13.  (Tr. Vol. III at 507.)  A review of the record confirms the state indeed failed to present any evidence of Mr. Gill's alleged disability prior to resting its case.  The state did not dispute that it had not produced evidence of Mr. Gill's disability when it rested.  Instead, the state indicated its belief that the having weapons under a disability charge had been waived in front of the jury and therefore was "maybe something that we can deal with later on."  (Tr. Vol. III at 507.)  The trial court agreed the having weapons under disability charge "was waived in front of the jury," and the state did not respond further to the Crim.R. 29(A) motion with

respect to that charge. (Tr. Vol. III at 508.) The trial court then denied the Crim.R. 29(A) motion, and the state reiterated it had "formally rest[ed]" its case. (Tr. Vol. III at 513-14.) On appeal, Mr. Gill argues the trial court erred in denying his Crim.R. 29(A) motion once the state formally rested its case.

{¶ 21} Crim.R. 29(A) governs a motion for judgment of acquittal. The rule provides:

> The court on motion of a defendant or on its own motion, ***after the evidence on either side is closed***, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. ***The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case***.

(Emphasis added.) " 'A conviction based on insufficient evidence constitutes a denial of due process.' " *State v. Pride*, 2011-Ohio-6055, ¶ 11 (10th Dist.), quoting *State v. Rawls*, 2004-Ohio-836, ¶ 25 (10th Dist.), citing *Thompkins*, 78 Ohio St.3d at 386. Although we apply the same standard when reviewing a Crim.R. 29 motion and a sufficiency of the evidence claim, *see State v. Abdullahi*, 2024-Ohio-418, ¶ 22 (10th Dist.), citing *State v. Fugate*, 2013-Ohio-79, ¶ 5 (10th Dist.), the procedural distinction between a Crim.R. 29(A) motion and a sufficiency of the evidence claim controls the scope of our review. In reviewing the denial of a Crim.R. 29(A) motion, "we consider only the evidence presented in the State's case-in-chief." *State v. Stokes*, 2016-Ohio-612, ¶ 22 (2d Dist.). "In contrast, we consider all of the evidence admitted at trial when considering whether a defendant's conviction was supported by sufficient evidence." *Id. See also State v. Harris*, 2023-Ohio-648, ¶ 33 (2d Dist.). From the plain language of the rule, a proper Crim.R. 29(A) motion cannot be made until the state concludes its case-in-chief. *See also State v. C.C.*, 2019-Ohio-4881, ¶ 5 (9th Dist.), quoting *State v. Hitsman*, 2018-Ohio-5315, ¶ 16 (9th Dist.), citing *State v. Kolat*, 2002-Ohio-4699, ¶ 16 (11th Dist.), citing *State v. Abercrombie*, 2002-Ohio-2414, ¶ 18 (12th Dist.) ("A motion that tests the sufficiency of the evidence 'cannot properly be made until, at the earliest, the conclusion of the state's case in chief and pursuant to a Crim.R. 29(A) motion.' ").

{¶ 22} In this case, the state affirmatively indicated on the record that it had rested its case without making any exception as to Count 7 and went through each of its exhibits

for admission, none of which pertained to the element of disability for purposes of Count 7. It was not until this point that Mr. Gill made his Crim.R. 29(A) motion, and the trial court then heard arguments from both parties on the motion. Given the language of Crim.R. 29(A), the trial court could not have entertained Mr. Gill's Crim.R. 29(A) motion until the state had concluded its case-in-chief. Stated another way, it was the state's conclusion of its case that rendered Mr. Gill's motion for judgment of acquittal a proper Crim.R. 29(A) motion.

{¶ 23} The state asserts it was not resting the entirety of its case, citing the trial prosecutor's comment to the trial court that the having weapons under disability charge would be handled "later on." (Tr. Vol. III at 507.) Though the state indicated its belief that Mr. Gill had waived the jury trial for Count 7, the state did not ask to modify its earlier statement resting its case. To the extent the state now argues the trial court also understood the trial prosecutor planned to address Count 7 separately such that the state's act of resting its case included an implicit exception for Count 7, we note there is nothing in the record indicating Mr. Gill and his counsel were aware of such an arrangement. To the contrary, Mr. Gill's repeated Crim.R. 29 motions, beginning at that moment after the close of the state's evidence, indicate Mr. Gill was not aware of, nor had agreed to, any arrangement for handling Count 7 separately. While Mr. Gill waived his right to a jury trial on Count 7, he did not move to sever or bifurcate Count 7 from the rest of the indictment. There is no indication in the record that all parties understood the state's presentation of evidence at trial did not or would not relate to Count 7; instead, the record shows the state intended to, and ultimately did, rely on the evidence presented to the jury to support the possession element of the having weapons under disability charge. Thus, we reject the state's argument that it was not resting its entire case when it stated, after calling its eleventh and final witness, that it "would rest pending admission of the exhibits that we've used for past few days." (Tr. Vol. III at 489.) Because the state had rested its case, the trial court was required to rule on Mr. Gill's Crim.R. 29(A) motion for judgment of acquittal at that time.

{¶ 24} The trial court did not return a verdict on Count 7 until the state eventually submitted evidence of Mr. Gill's disability, more than a year after the jury's verdict in the first trial. The state argues that even if it was deemed to have rested its case on the third day of trial, the trial court had discretion, under Crim.R. 29(B), to reserve ruling on Mr.

Gill's Crim.R. 29 motion until it rendered its verdict on Count 7. But the discretion to reserve ruling on a Crim.R. 29 motion for judgment of acquittal applies when the motion is made "at the close of *all* the evidence." (Emphasis added.) Crim.R. 29(B). The rule is clear that the trial court "may not reserve ruling on a motion for judgment of acquittal made at the close of the ***state's case***." (Emphasis added.) Crim.R. 29(A). Though Mr. Gill renewed his Crim.R. 29 motion several times throughout the course of these proceedings, our focus for purposes of this appeal is his first Crim.R. 29 motion made at the close of the state's case-in-chief. That motion was a proper Crim.R. 29(A) motion for judgment of acquittal made at the close of the state's case and, as such, the trial court was required to rule on it based on the evidence the state had presented by that time. *See State v. Doss*, 2019-Ohio-436, ¶ 18 (9th Dist.), citing *State v. Maxwell*, 2010-Ohio-4214, ¶ 13 (9th Dist.) ("When a motion is made at the conclusion of the State's case, the trial court ***must rule at that time*** without reserving judgment until the defense has rested," and when an appellate court reviews the denial of Crim.R. 29(A) motion, it applies the standard for the sufficiency of the evidence "to the evidence presented by the State ***in its case-in-chief***."). (Emphasis added.)

{¶ 25} The state further argues the trial court had discretion to permit the state to reopen its case to introduce more evidence even after Mr. Gill made his Crim.R. 29(A) motion, relying on the decision of the Ninth District Court of Appeals in *State v. Nerren*, 2006-Ohio-2855 (9th Dist.). In *Nerren*, the Ninth District concluded the trial court acted within its discretion to permit the state to reopen its case immediately following the defendant's Crim.R. 29(A) motion to present evidence of an element of the offense that had been omitted before the state rested. *Nerren* relies on another Ninth District case, *State v. Pertee*, 1995 Ohio App. LEXIS 5150 (9th Dist. Nov. 22, 1995), for the more general proposition that the language in Crim.R. 29(A) prohibiting a trial court from withholding ruling on a motion for acquittal made at the close of the state's case until after the close of the defendant's case "does not remove the trial court's discretion to permit the State to reopen its case." *Pertee* at *7. In *Pertee*, the state sought leave to reopen its case in response to the defendant's Crim.R. 29(A) motion to allow the alleged victim to clarify her testimony in support of an essential element of the case. Following the alleged victim's clarifying

testimony, and before the defense began its case-in-chief, the trial court denied the defendant's Crim.R. 29(A) motion.

{¶ 26} We are not persuaded by the logic of *Pertee* and *Nerren* that Crim.R. 29(A) affords a trial court this discretion. *See* Crim.R. 29(A) ("[t]he court on motion of a defendant or on its own motion, after the evidence of either side is closed, ***shall*** order the entry of a judgment of acquittal . . . if the evidence is insufficient to sustain a conviction"). (Emphasis added.) Moreover, *Nerren* is distinguishable from the instant case. Unlike in *Nerren*, the state here did not move to reopen its case "upon the realization that it had inadvertently omitted the presentation of evidence relevant to its prosecution." *Nerren* at ¶ 14 ("[t]his is not the case where the State was permitted to reopen its case after further opportunity to obtain the necessary evidence" but was "a case of mere oversight by the State"). Instead, the state acknowledged it had not submitted any evidence relative to Mr. Gill's disability but did not indicate the failure to do so was a mere oversight. The state neither moved to reopen the case nor indicated it was prepared to introduce evidence of Mr. Gill's disability at that time; rather, the state simply asked the court to reserve ruling on Mr. Gill's Crim.R. 29(A) motion until "later on." (Tr. Vol. III at 507.) Thus, on these facts, *Nerren* is not persuasive.

{¶ 27} Both parties acknowledge the unusual procedural circumstances of this case. Consistent with the basic due process principle that criminal defendants have a right to hear the evidence against them before attempting to refute it, the state is required to present sufficient evidence of every element of an offense during its case-in-chief. *See, e.g., State v. Messenger*, 2022-Ohio-4562, ¶ 13, 18, citing *Thompkins*, 78 Ohio St.3d at 386-87, and *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); R.C. 2901.05(A); R.C. 2945.10(C) ("[t]he state must ***first*** produce its evidence and the defendant shall then produce the defendant's evidence"). (Emphasis added.) When the state rested its case on the third day of trial, Mr. Gill's motion for judgment of acquittal was a proper Crim.R. 29(A) motion. As such, the trial court was required to rule on the motion at that time and determine, from the evidence the state had presented during its case-in-chief, whether the state had presented sufficient evidence to satisfy each of the elements of having weapons while under disability. *Doss*, 2019-Ohio-436, at ¶ 18 (9th Dist.); *Stokes*, 2016-Ohio-612, at ¶ 22 (2d Dist.) (a review of the denial of Crim.R. 29(A) motion considers the evidence the state presented in its case-

in-chief). The record indicates, and the state does not dispute, that the state had not introduced any evidence demonstrating Mr. Gill's disability when Mr. Gill made his initial Crim.R. 29(A) motion. And, again, to the extent the state now argues the trial court also understood the trial prosecutor planned to address Count 7 separately such that the state's act of resting its case included an implicit exception for Count 7, there is nothing in the record indicating Mr. Gill and his counsel were aware of such an arrangement. In light of the unique facts of this case, whether we construe the trial court's denial of Mr. Gill's Crim.R. 29(A) motion as an outright denial related to Count 7 or as reservation of a ruling on the motion related to Count 7, we conclude the trial court erred in denying Mr. Gill's Crim.R. 29(A) motion made at the close of the state's case-in-chief.

{¶ 28} Accordingly, we conclude the state failed to present sufficient evidence of Mr. Gill's disability to support the charge of having weapons under disability pursuant to R.C. 2923.13 when it rested its case. *See Smith*, 2004-Ohio-4786, at ¶ 16 (10th Dist.). As such, the trial court erred in denying Mr. Gill's Crim.R. 29(A) motion for judgment of acquittal, and Mr. Gill's conviction for having weapons under disability must be reversed and vacated. *State v. Hernandez*, 2010-Ohio-2066, ¶ 21 (10th Dist.) (remedy for insufficient evidence is to vacate conviction and enter judgment of acquittal). Having determined the state failed to present sufficient evidence of the disability element, requiring reversal of Mr. Gill's conviction of having weapons under disability for insufficient evidence, we need not consider Mr. Gill's additional argument under his first assignment of error that the state also failed to present sufficient evidence that he possessed an operable firearm.

{¶ 29} Mr. Gill's first assignment of error is sustained.

### C. Tampering with Evidence

{¶ 30} Mr. Gill next argues the state presented insufficient evidence to convict him of tampering with evidence. In order to convict Mr. Gill of tampering with evidence, the state had to prove that, knowing an official proceeding or investigation was in progress or was about to be or likely to be instituted, he altered, destroyed, concealed or removed evidence with purpose to impair its value or availability as evidence in such proceeding or investigation. R.C. 2921.12(A)(1); *State v. Jackson*, 2024-Ohio-2721, ¶ 15 (10th Dist.).

{¶ 31} Mr. Gill argues the state failed to produce any evidence that he altered, destroyed, concealed or removed a gun with a purpose to impair its availability as evidence.

More specifically, he asserts the state presented evidence only that he possessed a gun on October 22, 2022 and law enforcement did not recover the gun during the investigation, thereby improperly conflating law enforcement's inability to locate the gun with proof that Mr. Gill altered, destroyed, concealed or removed the gun. We agree.

{¶ 32} To demonstrate the "concealment" element of tampering with evidence, the state must establish the defendant knowingly altered, destroyed, concealed, or removed the evidence with the purpose of impairing the value or availability of the evidence in an ongoing or likely investigation of proceeding. R.C. 2921.12. The statute thus requires an overt *act* of alteration, destruction, concealment, or removal, coupled with the requisite intent to impair its evidentiary value. *See, e.g.*, *State v. Workman*, 2024-Ohio-167, ¶ 38-39 (10th Dist.) (finding sufficient evidence of tampering with evidence where the defendant concealed or removed the gun "by the *act* of selling it to a stranger" a short time after being questioned by police) (emphasis added); *State v. Craig*, 2022-Ohio-1219, ¶ 14 (10th Dist.) ("to convict [appellant] of tampering with evidence, the state needed to submit sufficient evidence for the trier of fact to conclude [appellant] knew or should have known an investigation was forthcoming, but he nevertheless ***purposely took steps to conceal or remove*** the knife so as to impair its availability in the investigation," and finding sufficient evidence of tampering with evidence where appellant admitted to tossing the knife used in a stabbing out of the vehicle as he fled) (emphasis added); *State v. Wade*, 2023-Ohio-3490, ¶ 42 (10th Dist.) (sufficient evidence of tampering with evidence where the defendant threw a gun in a sewer after leaving the scene of a shooting); *State v. Freeman*, 2005-Ohio-5892, ¶ 22 (3d Dist.) ("Generally, violating R.C. 2921.12(A)(1) by concealing physical evidence requires some overt act of concealment by the defendant.").

{¶ 33} Other Ohio appellate districts have found the fact that a gun was not recovered during law enforcement's investigation is not, standing alone, sufficient evidence of tampering with evidence. *See, e.g.*, *State v. Beard*, 2009-Ohio-4412, ¶ 18 (6th Dist.), citing *State v. Wooden*, 86 Ohio App.3d 23, 27 (9th Dist. 1993) ("The inability of law enforcement to find the gun used in a shooting, by itself, does not show that the defendant 'altered, destroyed, concealed, or removed' it."); *State v. Spears*, 2008-Ohio-5181, ¶ 23 (2d Dist.) (insufficient evidence of tampering with evidence where law enforcement never found the gun and there was no properly admitted evidence to support an inference that

the defendant threw the gun away); *State v. Sheets*, 2023-Ohio-2591, ¶ 89 (4th Dist.) ("evidence that [the defendant] was seen with a gun at the scene of the crime, coupled with the fact that law enforcement never recovered the gun, does not constitute sufficient evidence to support a conviction for tampering with evidence"). We agree with the logic of these cases. Where law enforcement does not locate a gun present during the relevant incident, there must be some additional evidence to support the concealment element of a tampering with evidence charge. *See Beard* at ¶ 19, citing *State v. Copley*, 2005-Ohio-896, ¶ 12, 60 (10th Dist.) (sufficient evidence where law enforcement never recovered the gun used in the shooting but the defendant testified he dropped the weapon on the ground near a fence after he left the scene of the shooting); *Sheets* at ¶ 89 ("[a]lthough the gun used in the shootings was not found, that fact alone is insufficient to support an inference that [the defendant] tampered with it" because "the State presented no evidence that [the defendant] actually altered, destroyed, concealed, or removed the gun"). Here, the state did not offer any additional evidence to support the concealment element of tampering with evidence.

{¶ 34} As the Sixth District Court of Appeals explained in *Beard*, construing the fact that a piece of evidence is never found as proof of concealment relies on a "faulty syllogism: Witnesses saw [the defendant] fire a gun. The gun was never found. Therefore, [the defendant] must have tampered with the gun in order to make it unavailable as evidence against him." *Beard* at ¶ 20. Here, as in *Beard*, the state relied on the same flawed logic when it produced evidence that Mr. Gill possessed a gun at the scene and the gun was never found. Those two premises, without more, do not support an inference that Mr. Gill engaged in an act of alteration, destruction, concealment, or removal for the purpose of impairing an investigation. *Id.* at ¶ 20 (when "[t]he gun used in the shooting was not found, . . . that fact alone cannot lead to an inference that [the defendant] tampered with it"). *But see State v. Kelly*, 2008-Ohio-4683, ¶ 42 (10th Dist.) (where a knife used during the commission of a murder was never found, "[t]he jury could have reasonably concluded that the knife that left the impression on Mr. Kelly's body had been used in the commission of the crime, and that it had been removed from the scene and concealed for the purpose of impairing its evidentiary value").

{¶ 35} The state also argues, without citation to any authority, that Mr. Gill's act of leaving the scene before police arrived constituted tampering with evidence because it

deprived law enforcement of the opportunity to obtain testimonial evidence from him as a potential witness. We reject this argument. R.C. 2921.12(A)(1) specifically prohibits the alteration, destruction, concealment, or removal of "any record, document, or thing." The state does not identify any authority extending the list of physical evidence in R.C. 2923.12 to potential testimonial evidence. *See Freeman*, 2005-Ohio-5892, at ¶ 22 (3d Dist.) ("violating R.C. 2921.12(A)(1) by concealing ***physical evidence*** requires some overt act of concealment by the defendant"). (Emphasis added.) *See also* Committee Comment to R.C. 2921.12 ("In some respects, this section complements the section on perjury, in that it deals with the falsification of ***physical evidence*** while perjury deals with the falsification of testimony. The purview of this section is broader than that of perjury, however, since it includes not only falsification but removal, concealment, or destruction as well.") (Emphasis added.) More fundamentally, "[e]very offender has the right against self-incrimination and to remain silent pending an investigation, and therefore the state cannot use the silence of the accused as evidence to satisfy an element of a crime." *State v. Barry*, 2015-Ohio-5449, ¶ 25 (rejecting the "unmistakable crime" doctrine in connection with tampering with evidence because it erroneously imputes constructive knowledge of an investigation to a defendant). *See also Freeman* at ¶ 22 ("A mere failure to volunteer information has been held not to rise to the level of tampering with evidence.").

{¶ 36} We agree with Mr. Gill that the state failed to put forth any evidence that he engaged in an overt act to alter, destroy, conceal, or remove the gun with the purpose of impairing an investigation. The record indicates the state offered evidence only that Mr. Gill possessed a gun, law enforcement did not recover the gun, and Mr. Gill was not present at the scene when law enforcement arrived. Without more, the state did not present sufficient evidence to support a conviction of tampering with evidence. *Sheets*, 2023-Ohio-2591, at ¶ 89 (4th Dist.); *Beard*, 2009-Ohio-4412, at ¶ 20 (6th Dist.); *Spears*, 2008-Ohio-5181, at ¶ 23 (2d Dist.). Accordingly, Mr. Gill's tampering with evidence conviction and the accompanying firearm specification must be reversed and vacated. *Hernandez*, 2010-Ohio-2066, at ¶ 21 (10th Dist.); *State v. Ford*, 2011-Ohio-765, ¶ 17 (a firearm specification "is merely a sentence enhancement, not a separate criminal offense" and is contingent upon an underlying felony conviction).

{¶ 37} Mr. Gill's third assignment of error is sustained.

## IV. Remaining Assignments of Error

{¶ 38} In his second assignment of error, Mr. Gill argues the trial court violated his constitutional rights in its handling of the having weapons under disability charge. In his fourth assignment of error, Mr. Gill argues there was insufficient evidence to support the firearm specification accompanying his tampering with evidence conviction. In his fifth assignment of error, Mr. Gill argues his convictions are against the manifest weight of the evidence. Finally, in its sole assignment of error, the state argues the trial court's imposition of a non-mandatory prison term is clearly and convincingly contrary to law. Because our resolution of Mr. Gill's first and third assignments of error require reversal and vacating of Mr. Gill's convictions, the remaining assignments of error are moot, and we need not address them. *State v. Gideon*, 2020-Ohio-6961, ¶ 26 ("an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court"); App.R. 12(A)(1)(c) (an appellate court must decide each assignment of error "unless an assignment of error is made moot by ruling on another assignment of error").

## V. Disposition

{¶ 39} Based on the foregoing reasons, the trial court erred in denying Mr. Gill's Crim.R. 29(A) motion for judgment of acquittal on the weapons under disability charge, and the state presented insufficient evidence to find Mr. Gill guilty of tampering with evidence. Having sustained Mr. Gill's first and third assignments of error, rendering moot Mr. Gill's second, fourth, and fifth assignments of error and the state's sole assignment of error, we reverse the judgment of conviction of the Franklin County Court of Common Pleas and enter a judgment of acquittal.

*Judgement reversed*; *convictions vacated.*

BOGGS, P.J. and DINGUS, J., concur.